# Richmond

## Highway Express Lines, Inc. v. James C. Fleming, Adm'r, Etc.

November 25, 1946.*

Record No. 3078.

Present, Holt, C. J., and Hudgins, Gregory and Eggleston, JJ.

*This case was argued in June, 1946. Due to circumstances over which we have no control it was necessary to reassign it. Former Chief Justice Campbell and Justice Browning heard the argument but did not participate in the final determination, though the conclusions reached here are in accord with their expressed views.

The opinion states the case.

*Moore & Williams*, for the plaintiff in error.

*Stilson H. Hall, J. Sloan Kuykendall* and *R. Gray Williams*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Members of a bowling league in Leesburg engaged two horse-drawn wagons to transport them, on June 4, 1943, from Leesburg to Goose Creek Tavern, where they held their annual banquet. The party left Goose Creek Tavern, situated on Route 7, approximately three miles east of Leesburg, about 11:00 P. M., on their return journey. The rear wagon was drawn by two white Percheron horses and driven by Joseph A. Kincaid, a young, 22-year-old farmer, whose mother owned the team. When this wagon reached a point approximately two miles east of Leesburg, defendant's truck ran into the rear of it. At least three members of the party, including Mrs. James C. Fleming, were thrown out of the wagon. Mrs. Fleming was killed. Her administrator recovered a verdict of $11,000 on which the trial court entered judgment. Defendant seeks by this writ of error to have the verdict set aside and the judgment reversed.

Defendant contends that the evidence is insufficient to support the verdict.

The accident occurred a few feet east of Kincaid Gate. The paved portion of the highway was 20 feet wide with shoulders 4 to 5 feet wide. The east and west traffic lanes were divided by a white line in the center of the paved portion. The topography of the highway was rolling. The distance from the hill, referred to in the testimony as the second hill east of Kincaid Gate, to the point of the accident was 1709 feet; from the top of the first hill to the Kincaid gate was 1009 feet; and from the bottom of this hill to the east side of the Kincaid gate, the point of the accident, was 439 feet. The two wagons, one behind the other and 50 feet apart, were traveling from east to west on the extreme north side of the highway. The right horses and the right wheels of the wagons were entirely off the paved surface, and the left wheels were 4 to 5 feet from the center line. The rear wagon was approximately 16 feet long, over 6 feet wide and the body was 43 inches from the ground. Members of the party were seated on hay with their backs to the center of the wagon body and their feet

hanging over the sides; some were seated cross-legged on their feet; and three or four boys were seated on the rear with their feet hanging down. Many members of the party were dressed in white, the men in their shirt sleeves, and they were laughing, talking, singing and smoking.

Neither wagon displayed any light, but the witnesses for plaintiff testified that they saw the lights of the approaching truck from the top of the second hill to the point of the accident; that, as the truck came down the second hill, the wagons were clearly visible and they could see and recognize each other from the lights of the approaching truck; and that, after the truck reached the bottom of the first hill and started up the incline, the wagon and its passengers were clearly visible to the driver of the truck if he had been keeping a proper lookout The front of the truck, which was traveling at undiminished speed, struck the left rear corner of the wagon. Several crossbeams of the wagon body were broken; a 7-inch floor board was driven between the legs of one of the horses, inflicting serious injury; and the horses and the wagon were pushed forward 25 to 50 feet. Mrs. Fleming, who was seated cross-legged on her feet beside her husband, was thrown from the wagon to the hard surface. Her head was lying across the center lane of the highway. Her skull was cracked, revealing the membranes which covered the brain, and her scalp turned back.

Defendant contends that, owing to the topography of the highway and the failure of the wagon to be equipped with lights, its driver was unable to see the wagon until he was almost upon it, and that he instantly swerved his truck to the left but too late to avoid the collision. The jury rejected this theory of the case and adopted plaintiff's theory, which is supported by the overwhelming weight of the testimony.

Defendant contends that the $11,000 verdict is excessive. Decedent was a normal, healthy, married woman, 31 years of age, with a child 11 years old, at the time of the accident. We have repeatedly held, under the provisions of

the Lord Campbell act (Code, secs. 5786 and 5787), which fixes the maximum amount recoverable, that a verdict of a jury, assessing damages for wrongful death, is final and that this court has no authority to disturb it. See *Chick Transit Corp.* v. *Edenton*, 170 Va. 361, 368, 196 S. E. 648; *Harris* v. *Royer*, 165 Va. 461, 468, 182 S. E. 276.

Defendant's third contention is based on the doctrine of imputed negligence. The facts recited to support this contention are that Joseph A. Kincaid was negligent in operating a horse-drawn vehicle on the highway at night without lights, and that, since Mrs. Fleming was president of the bowling league, he was her agent.

The members of this league bowl several times a week and a small percentage of the sum paid to the owner of the bowling alley is reserved for entertainment. Once a year the parties have a banquet, plans for which are arranged by a committee. It is not established by the evidence that Mrs. Fleming took any part in arranging for transportation or in plans for the entertainment. The evidence does not reveal a case of master and servant or that the parties were engaged in a joint venture. The trial court committed no error in refusing to grant defendant's instruction on imputed negligence.

The only debatable question in the record is raised by the objection of defendant to the ruling of the trial court on the admission of evidence to the effect that defendant's liability was covered by insurance.

It is unnecessary to discuss the technical objections advanced by plaintiff to the sufficiency of defendant's exception to this ruling. The issue will be treated as if the defendant made full and timely exception to the ruling of the court on the admission of this line of testimony.

It appears that a few days after the accident William B. Gibson, an agent of the Maryland Casualty Company, visited and took written statements from various members of the bowling league. Five of these parties, who saw the accident or heard the crash of the truck into the wagon, were introduced as witnesses for plaintiff. The agent for

the insurance carrier, called as a witness by defendant, contradicted the testimony of these five witnesses on pertinent and vital matters in issue. On cross-examination, this agent denied that he had any interest in the outcome of the litigation. If the cross-examination had stopped there, it would have appeared that this was an unbiased and disinterested witness. However, at this stage of the cross-examination, attorneys for plaintiff, in the absence of the jury, told the trial court that this witness was an agent of the insurance carrier, and that, as such, he had made a thorough investigation of the accident. The court ruled that these facts were admissible and relevant, as they tended to establish the interest of the witness in the outcome of the litigation, and that argument on this testimony would be limited to the purpose for which it was admitted.

The courts in other jurisdictions are divided as to the admissibility of evidence establishing the fact that a defendant in a tort action carries liability insurance. A few courts, among them Nebraska (*Jessup* v. *Davis*, 115 Neb. 1, 211 N. W. 190, 56 A. L. R. 1403), take the view that such evidence is always admissible. The reasoning of these courts may be summarized as follows: The standard provisions of a liability insurance contract require the insured to notify the insurance carrier of the accident. Thereafter the carrier assumes full responsibility for the defense; sends its investigators to view the scene of the accident and to interview the witnesses; and employs attorneys who determine whether to settle the case or defend a law suit. The insured is required to render the insurance company only such assistance as it may demand. Actually, the real defendant is the insurance carrier and this fact should be known to the court and jury, otherwise the court becomes a party to "benevolent judicial concealment." If this class of evidence is not admitted, then the presence and interest of the actual defendant is never made known. The exclusion of such evidence is incompatible with an open court and judgments openly and publicly arrived at. "To compel and permit such proceeding is to countenance and participate in what

is tantamount to a fraud." See *Pavilonis* v. *Valentine*, 120 Ohio St. 154, 165 N. E. 730; *Rains* v. *Rains*, 97 Colo. 19, 46 P. (2d) 740; 2 Wigmore on Evidence, 3 Ed., sec. 282a.

This court has consistently held that the vital issue in this class of actions is whether defendant was guilty of negligence that was the proximate cause of the injury and that evidence as to whether defendant did or did not carry liability insurance was irrelevant and inadmissible. This holding is based on the theory that such evidence tends to unduly influence the jury in behalf of the plaintiff. See *Edwards* v. *Laurel Branch Coal Co.*, 133 Va. 534, 114 S. E. 108; *Rinehart, etc., Co.* v. *Brown*, 137 Va. 670, 120 S. E. 269; *Lanham* v. *Bond*, 157 Va. 167, 160 S. E. 89; *Irvine* v. *Carr*, 163 Va. 662, 177 S. E. 208.

 It did not appear in any of the Virginia cases cited that the fact that defendant carried liability insurance was admissible on any ground other than that such carrier was the party ultimately liable. The evidence in the case at bar was clearly admissible under the well settled rule that a litigant has a right to establish facts and circumstances tending to show the interest, bias or prejudice of a hostile witness. Both rules cannot be applied in this case. The facts tending to show the interest or bias of the witness cannot be admitted without establishing the fact that the defendant carried liability insurance. "In this Scylla-and-Charybdis dilemma most Courts have attempted to concede something to each of the opposing principles, *i. e.* by allowing the questions when properly asked" either of a juror on his *voir dire* or of a witness to establish his interest or bias. 2 Wigmore on Evidence, 3 Ed., sec. 282a.

The activity of this witness in preparation for the trial and his testimony on direct examination made it imperative for the jury to know his full relation to the named defendant and the insurance carrier. He, as a paid employee, visited the scene a few days after the acident. He interviewed numerous witnesses and reduced their statements to writing. In the trial he was introduced by the defendant in an attempt to discredit or impeach the testimony of numer-

ous witnesses introduced by plaintiff. The jurors, in deciding whether defendant was negligent, had to determine what weight, if any, they must give to the testimony of the agent for the insurance carrier. If they accepted his testimony, they had to discard the testimony of many of plaintiff's witnesses. Under these circumstances, the jurors were entitled to know his interest or bias and his relation to the party ultimately liable. As Judge Soper said, in *Sprinkle v. Davis*, 111 F. (2d) 925, 128 A. L. R. 1101, such evidence should be admitted for the value the jury may accord to it. The trial court, if requested by proper instruction, should inform the jury of the purpose for which such evidence was admitted.

The other assignments of error are not well taken and not of sufficient importance to merit discussion.

The judgment is affirmed.

*Affirmed.*