Present:  All the Justices

RALPH D. LOMBARD

v.  Record No. 002459

DORSEY W. ROHRBAUGH

                              OPINION BY JUSTICE DONALD W. LEMONS
                                    September 14, 2001

VIRGINIA FARM BUREAU MUTUAL INSURANCE COMPANY

v.  Record No. 002675

DORSEY W. ROHRBAUGH


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Dennis J. Smith, Judge

     In these two appeals, we consider whether the trial court

erred in permitting Dorsey W. Rohrbaugh ("Rohrbaugh") to

mention liability insurance during cross-examination of a

physician who testified on behalf of Ralph D. Lombard

("Lombard") and Virginia Farm Bureau Mutual Insurance Company

("Farm Bureau").  Additionally, we consider the enforceability

at trial of a stipulation reached during pretrial discovery

proceedings and the trial court's denial of Lombard's

proffered cautionary instruction.

                    I.  Facts and Proceedings Below

     Rohrbaugh was injured in an automobile accident on August

11, 1995, when his automobile was struck from behind by a

vehicle operated by Lombard.  Lombard had a liability policy

of insurance with Allstate Insurance Company ("Allstate"). Farm Bureau provided Rohrbaugh's motor vehicle insurance. Rohrbaugh filed his motion for judgment against Lombard on June 25, 1999, in the Circuit Court of Fairfax County. He served the motion for judgment on Lombard and upon his own carrier, Farm Bureau, as the underinsured motorist carrier pursuant to Code § 38.2-2206. Allstate provided counsel for Lombard, who filed appropriate responsive pleadings. Farm Bureau, pursuant to Code § 38.2-2206, filed a separate response to the motion for judgment in its own name.

Rohrbaugh presented evidence at trial that two of his cervical discs were herniated and his back was injured as a result of the accident. Lombard and Farm Bureau disputed the existence, as well as the causation, of any injuries and contended that Rohrbaugh's continued pain and subsequent anterior cervical discetomy and fusion were due to a pre-existing arthritic condition.

Allstate and Farm Bureau engaged Bruce J. Ammerman, M.D. ("Dr. Ammerman") to conduct a medical examination of Rohrbaugh pursuant to Rule 4:10 of the Rules of the Virginia Supreme Court. Dr. Ammerman was regularly employed not only by Allstate, but by numerous other insurance companies to conduct Rule 4:10 examinations. In discovery proceedings, Rohrbaugh

attempted to determine precisely how much money Dr. Ammerman had been paid by Allstate for such forensic work.

From a prior unrelated personal injury action, Rohrbaugh's counsel had obtained from Allstate a computer printout indicating the amounts paid by Allstate to Dr. Ammerman in various years, including 1998 and 1999. In pretrial depositions in the unrelated case, Dr. Ammerman had acknowledged that the reported figures were accurate; however, he testified that he could not state how much of his income from Allstate was for forensic work and how much was for patient care. Aware of this absence of differentiation among the payments, Rohrbaugh's counsel in the present case caused a subpoena to be issued for a deposition pursuant to Rule 4:5(b)(6) of an Allstate corporate designee knowledgeable about payments to Dr. Ammerman. Allstate engaged counsel independent from that which it provided for Lombard and filed a motion to quash the notice of deposition.

The Honorable R. Terrence Ney denied the motion to quash and further ordered that the deposition of the Allstate designee would proceed with the understanding that Allstate would provide a witness who could differentiate between payments made to Dr. Ammerman for medical services and payments made for forensic services. On the date of this ruling, Rohrbaugh's counsel suggested to Allstate's counsel

3

that Allstate's designee might need access to a computer terminal and offered to hold the deposition in an Allstate office. Allstate's counsel rejected this effort to accommodate the witness and insisted that the deposition be taken at the office of Rohrbaugh's counsel, where it had been noticed.

The deposition of Allstate's designee occurred on June 6, 2000 at Rohrbaugh's counsel's office and was attended by Lombard's counsel, Allstate's counsel, and Rohrbaugh's counsel.[1] Farm Bureau's counsel, although given notice, elected not to attend. Immediately prior to the beginning of the deposition, a telephone call was placed to Farm Bureau's counsel, and Rohrbaugh's counsel was advised that no one would be appearing on behalf of Farm Bureau. As anticipated by Rohrbaugh's counsel, the Allstate designee could not differentiate the reasons for the payments made by Allstate to Dr. Ammerman simply by looking at a computer printout and testified that if she had access to the Allstate computer system, she could identify the reason for particular payments. Rohrbaugh's counsel sought to move the deposition to a

---

[1] The deposition was originally noticed for May 8, 2000. The motion to quash was filed on May 5, 2000, but the notice of the motion to quash was not filed until May 22, 2000. The hearing on the motion to quash occurred on June 2, 2000 and on that date, Judge Ney ordered the deposition to proceed on June 6, 2000.

4

location where the witness could obtain information from the Allstate computer system; however, counsel for Allstate refused. At that time, Rohrbaugh's counsel indicated that he would call Judge Ney for a ruling on the matter. Lombard's counsel left the deposition before Judge Ney was called, stating, "I'm going to let you guys do whatever you're doing. I'm going to excuse myself, because I have a bunch of other things." The deposition was still in progress, but Judge Ney was presiding over other matters and was not available. Rohrbaugh's counsel stated that the deposition would remain open until a ruling could be obtained from Judge Ney.

Later that day Judge Ney became available by telephone and, in a conference call with Rohrbaugh's counsel and Allstate's counsel, Judge Ney indicated that he would order Allstate to make the designated witness available at a computer terminal where the information sought could be obtained. Allstate's counsel remained opposed to this solution and offered the alternative of stipulating to the accuracy of the amounts paid to Dr. Ammerman and "agreed not to attempt to differentiate between the services for which they were made." Instead of ordering the continuation of the deposition at a computer terminal, Judge Ney accepted Allstate's alternative solution and, in an opinion letter

5

rendered after the trial in this matter, Judge Ney summarized

his ruling as follows:

> Finally, the Court's ruling as to the computer terminal was not in any manner a sanction but rather an order compelling discovery. While the details of the written Order of July 21st, 2000 reflect the agreement between counsel for plaintiff and Allstate as to the limitations placed on Dr. Ammerman's testimony insofar as a differentiation of the payments made to him by Allstate, those terms were not ordered by the Court. They resulted solely from the agreement between counsel when faced with the consequences of the Court's order compelling discovery by the use of a computer terminal.

Judge Ney did not address whether or how the relationship

between Dr. Ammerman and Allstate could be explored at the

trial. Allstate stipulated that it had paid Dr. Ammerman

$106,520 in 1998, and $104,971 in 1999. The reasons for these

payments were not differentiated.

The trial of this matter was held before the Honorable

Dennis J. Smith. At trial, Rohrbaugh was permitted to

deliberately inject the concept of insurance into the case by

cross-examining Dr. Ammerman on potential bias concerning the

total amount of money he received from Allstate. Among other

questions, Rohrbaugh asked Dr. Ammerman, "[i]n fact, Doctor,

Allstate Insurance Company, who is the insurance company for

the defendant in this case, has paid you in 1999, $104,971,

right?" Rohrbaugh's counsel continued, "[i]n 1998, if I told

6

you that Allstate Insurance Company had paid you $106,520, the same answer, I'm assuming."

In Dr. Ammerman's responses, he confirmed the amounts paid, but, contrary to Judge Ney's ruling, nonetheless testified that he did not know in what capacity he received the money.  He further stated that he could not speak to the "veracity [of Allstate's document listing the payments] one way or the other, because [he] didn't produce it" and suggested that the "document breaks out patients [he had] treated."

This cross-examination concerning bias was permitted over vigorous objection from Lombard and Farm Bureau.  The trial court rejected an alternative method of conducting cross-examination that would have made reference to forensic examinations, but not the existence of insurance.  Prior to Dr. Ammerman's testimony, the trial court gave a cautionary instruction to the jury that it was not to consider the existence of insurance for any purpose other than the possible bias of Dr. Ammerman.[2]

---

[2] The trial court stated the following prior to the direct examination of Dr. Ammerman:

> Ladies and gentlemen, the cross
> examination of Dr. Ammerman will ask
> questions intended to elicit evidence
> regarding payments made to Dr. Ammerman by

In closing argument, Rohrbaugh's counsel was permitted to mention the relationship between Dr. Ammerman and Allstate for the purpose of arguing that Dr. Ammerman's testimony was biased. At the conclusion of the trial, the jury returned a verdict in favor of Rohrbaugh in the amount of $125,000. In post-verdict motions, Lombard and Farm Bureau requested Judge Ney to reconsider his pretrial ruling concerning stipulations. The motion was denied. Lombard and Farm Bureau also filed motions asking Judge Smith to declare a mistrial, set aside the jury's verdict, and order a new trial.[3] These motions were denied as well.

On appeal, Lombard and Farm Bureau allege that the trial court erred in permitting Rohrbaugh to impeach Dr. Ammerman with the purposeful mentioning of liability insurance. Additionally, Lombard alleges that the trial court erred in

---

a liability insurance company which provides coverage to the defendant.
You may only consider this as evidence of possible bias on the part of Dr. Ammerman. The fact of the existence of any liability insurance in this case is not to be considered by you in any way in determining whether the defendant was negligent, whether any negligence of the defendant proximately caused any injury to the plaintiff, or the amount of any judgment you might ultimately award.

[3] Lombard filed a "Motion to Declare a Mistrial, Set Aside the Verdict and Grant a New Trial," while Farm Bureau filed a "Motion to Set Aside Jury's Verdict and Motion for New Trial."

"disallowing a jury instruction offered by the Defendant's counsel that would properly have warned the jury against taking an assertion of fact contained in Rohrbaugh's counsel's cross-examination as evidence of that fact." Finally, Farm Bureau alleges that the trial court erred in enforcing, at trial, the pretrial stipulation between Allstate and Rohrbaugh concerning the amounts paid to Dr. Ammerman and the agreement not to differentiate between forensic payments and medical care payments at trial.

## II. Analysis

### A. Evidence of Insurance

Initially we consider the trial court's decision allowing presentation of evidence of insurance. With regard to the admission of evidence, the responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse. Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).

The trial court's decision to permit Rohrbaugh to deliberately interject insurance into the trial involves the tension between two established rules concerning admission of evidence and cross-examination of witnesses. We have previously stated that, "evidence as to whether defendant did

9

or did not carry liability insurance was irrelevant and inadmissible.  This holding is based on the theory that such evidence tends to unduly influence the jury in behalf of the plaintiff."  Highway Express Lines v. Fleming, 185 Va. 666, 672, 40 S.E.2d 294, 297 (1946).  At one time, we adhered to the rule that "it is reversible error not to grant a mistrial where the reference to insurance is deliberate and for improper purposes."  Davis v. Maynard, 215 Va. 407, 408, 211 S.E.2d 32, 33 (1975).  However, we recognized in Medina v. Hegerberg, 245 Va. 210, 427 S.E.2d 343 (1993), that:

> Generally, any comment deliberately made to inform the jury that a defendant is insured against an accident constitutes reversible error.  The policy underlying this rule is to insure that a jury does not award damages unrelated to any finding of fault because it is aware that insurance coverage exists and that the insurer, rather than the named defendant, would pay the damages award.  The mention of insurance constitutes reversible error requiring a new trial when the comment probably has misled or prejudiced the jury.
>
> Nevertheless, this rule is not absolute. For example, when the insurer is the named defendant in a direct action authorized by the insurance policy, the insurer has waived any claim of prejudice.  Likewise, when sufficient cautionary instructions are made by the court following a mention of insurance, we generally will not hold comments regarding insurance coverage to be reversible error.  And, mention of insurance may not be reversible error where there is an otherwise fair trial and substantial justice is done.

10

Id. at 213-14, 427 S.E.2d at 345-46 (internal citations and quotation marks omitted).

The general rule prohibiting the mention of insurance in such cases may collide with another rule concerning a litigant's right to cross-examine a witness concerning interest, bias, prejudice, credibility, or relationship to the parties. Although the "trial court has discretion to limit the scope of cross-examination which is for the purpose of establishing bias," such discretion must not be exercised to prohibit proper cross-examination. Norfolk & Western Ry. Co. v. Sonney, 236 Va. 482, 488, 374 S.E.2d 71, 74 (1988).

In Fleming, a paid employee of the defendant's insurance carrier who had interviewed several of plaintiff's witnesses immediately after the accident, testified at trial in contradiction of plaintiff's witnesses. The trial court permitted plaintiff, on cross-examination, to reveal to the jury the potential bias of defendant's witness by establishing the employment relationship between the witness and the insurance carrier for the defendant. Id. at 670, 40 S.E.2d at 297. In affirming the trial court's judgment, we observed:

> This court has consistently held that the vital issue in this class of actions is whether defendant was guilty of negligence that was the proximate cause of the injury and that evidence as to whether defendant did or did not carry liability insurance was irrelevant and inadmissible. This holding is based on the

11

theory that such evidence tends to unduly influence the jury in behalf of the plaintiff.

It did not appear in any of the Virginia cases cited that the fact that defendant carried liability insurance was admissible on any ground other than that such carrier was the party ultimately liable. The evidence in the case at bar was clearly admissible under the well settled rule that a litigant has a right to establish facts and circumstances tending to show the interest, bias or prejudice of a hostile witness. Both rules cannot be applied in this case. The facts tending to show the interest or bias of the witness cannot be admitted without establishing the fact that the defendant carried liability insurance. "In this Scylla-and-Charybdis dilemma most Courts have attempted to concede something to each of the opposing principles, i.e. by allowing the questions when properly asked" either of a juror on his voir dire or of a witness to establish his interest or bias. 2 Wigmore on Evidence, 3 Ed., sec. 282a.

The activity of this witness in preparation for the trial and his testimony on direct examination made it imperative for the jury to know his full relation to the named defendant and the insurance carrier. He, as a paid employee, visited the scene a few days after the accident. He interviewed numerous witnesses and reduced their statements to writing. In the trial he was introduced by the defendant in an attempt to discredit or impeach the testimony of numerous witnesses introduced by plaintiff. The jurors, in deciding whether defendant was negligent, had to determine what weight, if any, they must give to the testimony of the agent for the insurance carrier. If they accepted his testimony, they had to discard the testimony of many of plaintiff's witnesses. Under these circumstances, the jurors were entitled to know his interest or bias and his relation to the party ultimately liable. As Judge Soper said, in Sprinkle v. Davis, 111 F.(2d) 925, 128 A.L.R. 1101 [(4th Cir. 1940)], such evidence should be admitted for the value the jury may accord to it. The

> trial court, if requested by proper
> instruction, should inform the jury of the
> purpose for which such evidence was admitted.

Id. at 672-73, 40 S.E.2d at 297-98 (internal case citations

omitted).

Although the mention of insurance was not an issue, we

encountered a similar dilemma in Henning v. Thomas, 235 Va.

181, 366 S.E.2d 109 (1988), where, in a medical negligence

case, defendants' counsel sought to cross-examine plaintiff's

expert witness concerning how he became involved in the case.

The trial court would not permit cross-examination other than

upon the narrow question of whether the witness was being paid

to give his testimony.  Id. at 187, 366 S.E.2d at 112.  The

defendants claimed that the trial court erred in prohibiting

them from revealing to the jury that plaintiff's expert

witness was employed by a nationwide company engaged in the

business of providing testimony in medical negligence cases.

Agreeing with defendants, we reversed, noting that:

> The bias of a witness, like prejudice and
> relationship, is not a collateral matter.  The
> bias of a witness is always a relevant subject
> of inquiry when confined to ascertaining
> previous relationship, feeling and conduct of
> the witness. . . . [O]n cross-examination great
> latitude is allowed and . . . the general rule
> is that anything tending to show the bias on
> the part of a witness may be drawn out.
>                                        . . .
>      The defendant doctors were entitled to
> attempt to persuade the jury that [plaintiff's
> witness] was a "doctor for hire," who was part

13

> of a nationwide group that offered themselves
> as witnesses, on behalf of medical malpractice
> plaintiffs. Once the jury was made aware of
> this information it was for the jury to decide
> what weight, if any, to give to [the witness']
> testimony. This was a classic case of an
> effort to establish bias, prejudice, or
> relationship.

Id. at 188-89, 366 S.E.2d at 113 (internal citations omitted) (emphasis removed).

In the case before us today, the trial court did not err in permitting Rohrbaugh to cross-examine Dr. Ammerman concerning his relationship with Allstate. Dr. Ammerman had a substantial connection with Allstate, including receipt of over $100,000 per year in payments for the years 1998 and 1999.[4] Lombard and Farm Bureau argue that because Dr. Ammerman is not an employee of Allstate as the witness was in Fleming, Rohrbaugh should not have been permitted to mention insurance in cross-examination. Additionally, Lombard and Farm Bureau argued at trial that Rohrbaugh should be limited in cross-examination to questions relating to frequency of testimony and whether the witness testified more or less frequently for defendants rather than plaintiffs. The trial court correctly

---

[4] Although there was no differentiation between payments for medical services and payments for forensic services, Rohrbaugh was not responsible for the inability to distinguish between reasons for payment at trial. Rohrbaugh sought through proper discovery to determine precisely how much Dr. Ammerman was paid by Allstate for forensic services. Allstate

refused each of these proposed limitations upon cross-examination.

A witness' status as an employee of an insurance company providing coverage to a party is evidence of potential bias, but the absence of an employer-employee relationship does not define the limits of cross-examination. At issue is the potential for bias because of the witness' interests in the case, not artificial labels. Similarly, the suggestion that Rohrbaugh be limited to questions about frequency of forensic testimony and identification of Dr. Ammerman's preference for testifying on behalf of plaintiffs or defendants misses the crux of the issue, namely, whether there is a substantial connection between the witness and a particular insurance carrier that has a financial interest in the outcome of the case.

A majority of jurisdictions addressing this issue apply a "substantial connection" analysis to determine whether the relationship between a party and a witness, particularly an expert witness, is such as to make proof of their financial dealings sufficiently probative to outweigh prejudice that arises from knowledge that the party carries liability

---

resisted such discovery and subsequently entered into a stipulation, accepted by the trial court.

15

insurance.[5]  See Otwell v. Bryant, 497 So.2d 111 (Ala. 1986);

Bonser v. Shainholtz, 3 P.3d 422 (Colo. 2000); Hawes v. Chua,

769 A.2d 797, 810 (D.C.App. 2001); Mills v. Grotheer, 957 P.2d

540 (Ok. 1998); Yoho v. Thompson, No. 25273, 2001 WL 289788

(S.C. Mar. 26, 2001).  As the Colorado Supreme Court noted in

Bonser, "[t]he substantial connection analysis looks to

whether a witness has 'a sufficient degree of "connection"

with the liability insurance carrier to justify allowing proof

of this relationship as a means of attacking the credibility

of the witness.' "  Bonser, 3 P.3d at 425 (quoting Otwell, 497

So.2d at 115).

In a very recent case, remarkably similar to the one before

us today, the Supreme Court of South Carolina considered the

propriety of permitting cross-examination of a defendant's

expert witness concerning the witness' relationship with the

insurance carrier providing underinsured liability coverage.[6]

---

[5] Some courts have applied a similar analysis without using the label "substantial connection."  See Barsema v. Susong, 751 P.2d 969, 974 (Ariz. 1988); Kelley v. Wiggins, 724 S.W.2d 443, 446-47 (Ark. 1987); Golden v. Kishwaukee Community Health Servs. Ctr., Inc., 645 N.E.2d 319, 325-26 (Ill.App.Ct. 1994); Strain v. Heinssen, 434 N.W.2d 640, 643 (Iowa 1989); Wallace v. Leedhanachoke, 949 S.W.2d 624, 627-28 (Ky.Ct.App. 1996); Davila v. Bodelson, 704 P.2d 1119, 1126 (N.M.Ct.App. 1985); Cerasuoli v. Brevetti, 166 A.D.2d 403, 404 (N.Y.App.Div. 1990).

[6] South Carolina rules of evidence 403 and 411 are patterned after the Federal Rules of Evidence.  Although we have not and do not adopt the Federal Rules, the operative

16

The witness did "a fair amount of consulting work" with the carrier and "ten to twenty percent of [the witness'] practice consisted of reviewing records for insurance companies." Yoho, 2001 WL 289788, at *1. The witness gave lectures to the carrier's agents and adjusters. Id. at *3. Additionally, "his yearly salary was based on the amount of money his practice earned, which included his consulting work." Id. at *1. Holding that "the trial court erred in refusing to allow Yoho to cross-examine [the expert witness] about his relationship with [the carrier]," the South Carolina Supreme Court rejected the same alternative suggestion made by Lombard and Farm Bureau in the case before us. Id. at *3. Rejecting the argument that any error was harmless, the South Carolina Supreme Court stated:

> Although the court gave Yoho permission to
> discuss [the expert witness'] bias by using
> generic terms such as "defense," "defendants,"
> and "defense lawyer," Yoho sought to show
> specifically that [the witness] consulted for
> [the carrier] and lectured [the carrier's] agents
> and adjusters. This evidence is qualitatively
> different from showing [the expert witness] works
> for "the defense" generally, and is much more
> indicative of possible bias in favor of the
> defendant.

Id.

---

principles of law involved in Yoho have been well-established in Virginia case law.

We reaffirm the general principle that evidence as to whether a defendant did or did not carry liability insurance is generally irrelevant and inadmissible in a trial to address issues of negligence, causation, and damages.  However, consistent with our prior cases and the majority view in the United States, we hold that testimony concerning liability insurance may be elicited for the purpose of showing bias or prejudice of a witness if there is a substantial connection between the witness and the liability carrier.  If a substantial connection is demonstrated, its probative value concerning potential bias or prejudice outweighs any prejudice to the defendant resulting from the jury's knowledge that the defendant carries liability insurance.  Of course, as the trial court did in this case, a cautionary instruction to the jury concerning the limits of the jury's consideration of the evidence must be given upon request of a defendant. Accordingly, we hold that the trial court did not abuse its discretion in permitting cross-examination of Dr. Ammerman concerning his relationship with Allstate, and properly refused to narrow the scope of questioning to exclude any mention of insurance.

B. Denial of Lombard's Proposed Cautionary Instruction

Lombard assigns as error the trial court's refusal to instruct the jury that questions by Rohrbaugh's counsel during

18

cross-examination of Dr. Ammerman did not provide evidence of the matters contained in those questions.  Upon review of jury instructions given or refused at trial, our responsibility is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises."  Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982) (citing E. I. DuPont v. Snead's Amr., 124 Va. 177, 97 S.E. 812 (1919)).  Moreover, the proffered instruction "must be supported by more than a mere scintilla of evidence." Gibson v. Commonwealth, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975).  An instruction that is not supported by the evidence, however, is properly refused.  Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986).

At trial, counsel for Lombard requested a cautionary instruction prior to Dr. Ammerman's testimony that was duplicative of the one given with the exception of the following additional language: "You may not consider the mere asking of such questions as evidence of the truth of such payments."  The trial court refused to give Lombard's proffered instruction.

It is readily apparent that this assignment of error is premised upon Lombard's misunderstanding of the content of Rohrbaugh's questions to Dr. Ammerman upon cross-examination. Repeatedly, on brief and in oral argument, Lombard asserts

that Rohrbaugh's questions referred to payments for forensic work.  A review of the record reveals that Lombard is wrong in his assessment of what transpired at trial.  In accordance with the pretrial stipulation, Rohrbaugh asked about payments in general without specific reference to forensic work.  Nonetheless, citing Rakes v. Fulcher, 210 Va. 542, 172 S.E.2d 751 (1970), Lombard argues that the trial court erred in refusing his instruction concerning the content of counsel's questions.  We disagree.

In Rakes, the objectionable questions posed by counsel were prefaced with introductions such as, "[d]o you recall telling the ***?," "[d]idn't you also tell me ***?," "[d]idn't you tell me ***?," and "[w]hy did you tell me ***?"  Id. at 548, 172 S.E.2d at 756.  Rejecting this form of questioning as improper, we stated:

> To have permitted the questions in the proposed form, the court would have in effect been permitting counsel to testify against [the witness] without becoming a witness, and this could have resulted in giving the jury the impression that the facts assumed by the questions actually existed.  Such a procedure would have amounted to an unwarranted and improper attempt to discredit the witness.  Thus we hold that the trial court did not abuse its discretion in holding that the proposed cross-examination was improper.

Id. at 548-49, 172 S.E.2d at 757 (internal citation omitted).

20

In stark contrast to Rakes, Rohrbaugh's counsel asked questions in proper form for cross-examination. As such, the questions were "leading" in that they often contained the answer sought, but permitted Dr. Ammerman to admit or deny the question. Of great significance, Dr. Ammerman admitted receipt of the payments from Allstate. The questions of Rohrbaugh's counsel concerning payments did not, as suggested by Lombard, contain reference to forensic work. Accordingly, the trial court properly refused Lombard's proffered jury instruction.

C. Binding Effect of Allstate's Stipulation

Finally, Farm Bureau maintains that the trial court erred in permitting Allstate, a non-party, to make a stipulation binding upon Lombard, Farm Bureau, and Dr. Ammerman when Farm Bureau did not consent to, nor have knowledge or notice of the hearing on the stipulation. This assignment of error refers to the pretrial ruling of Judge Ney that was enforced at trial by Judge Smith.

The deposition of the Allstate representative was taken on June 6, 2000, one day before trial. Notice was given to counsel for Lombard and counsel for Farm Bureau. Pursuant to Rule 4:5(b) of the Rules of the Virginia Supreme Court, the notice stated the time and place of the deposition. In addition, the notice indicated that Rohrbaugh sought to

21

question Allstate's designee concerning an attached printout described as "Allstate Insurance Companies IRS Payments List and Payment Detail for TIN Number 521074671, Washington Neurosurgical Associates, P.C., and Bruce Ammerman, M.D., for the period beginning January 1, 1995 to December, 31, 1999."

The purpose of such a deposition was readily apparent to defense counsel. Questions about payments made by Allstate to Dr. Ammerman for a period of five years could only relate to discovery of information sought for the purpose of impeachment at trial. Allstate retained counsel separate from counsel retained for Lombard to defend its interests. Farm Bureau's counsel chose not to attend the deposition.

The Allstate designee could not identify certain codes in the printout relating to the purpose of payments without access to an Allstate computer terminal. Counsel for Allstate resisted moving the location of the deposition to a place where the obvious purpose of the deposition could be accomplished. Not satisfied, Rohrbaugh's counsel indicated that he would call Judge Ney for clarification of the trial court's previous order compelling the deposition. Without waiting for the telephone call to be made to Judge Ney, counsel for Lombard left the deposition. The deposition, however, remained pending, and later that day Judge Ney conducted a conference call with counsel for Rohrbaugh and

Allstate.  Judge Ney indicated that he would order Allstate to make the witness available at a computer terminal where the information could be obtained.  After Judge Ney's ruling and on his own initiative, counsel for Allstate offered the alternative of stipulating to the accuracy of the amounts paid by Allstate to Dr. Ammerman.  Counsel for Allstate also agreed that neither Dr. Ammerman nor counsel would attempt to differentiate between the types of services for which the payments were made.  Judge Ney accepted the stipulation in lieu of his order with the understanding that neither Dr. Ammerman nor counsel would discuss the allocation of the payments.

Rohrbaugh's counsel had sought to differentiate between medical payments and forensic payments from Allstate to Dr. Ammerman for the obvious purpose of impeachment at trial.  Allstate and Farm Bureau had retained Dr. Ammerman for the purpose of examination of Rohrbaugh and testimony at trial.  When Allstate offered a stipulation as a compromise solution in response to Rohrbaugh's attempt to discover precise information for use at trial, Judge Ney accepted the stipulation as an alternative to his order.  Rule 4:7 of the Rules of the Virginia Supreme Court provides for use of depositions in court proceedings "against any party who was present or represented at the taking of the deposition or who

23

had reasonable notice thereof." Certainly, defense counsel could not be surprised by the possibility that deposition testimony could be offered in conformance with the Rules at trial. Similarly, counsel could not be surprised by the possibility that pretrial orders could be made during a deposition and stipulations could be reached that affected parties with notice of the proceedings. As Judge Ney noted in his opinion letter:

> [C]ounsel for the defendant and the uninsured motorist carrier were both properly noticed for the deposition of the Allstate designee. One chose not to attend and another chose to leave the deposition before it concluded, but not before the dispute which led to the conference call had begun. As a result, their complaints about the Court's ruling ordering the use of the computer terminal come too late. They were not present to object to the Court, and they were also not present to object to the agreement.

Judge Smith did not err in enforcing at trial a stipulation reached in a pretrial discovery proceeding where parties had notice and opportunity to object but chose not to participate.

## III. Conclusion

For the reasons stated, we will affirm the judgment of the trial court.

<u>Affirmed</u>.

24