# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 29th day of August, 2019.*

Present: All the Justices

Michael Phillip Gross, et al.,                                              Appellants,

 against          Record No. 180758
                  Circuit Court No. 2016-16283

Supen Peze Stuart,                                                          Appellee.

                                                    Upon an appeal from a judgment
                                                    rendered by the Circuit Court of Fairfax
                                                    County.


        Michael Phillip Gross and William Plastic Surgery and Spa Services Company, LLC (hereinafter referred to collectively as "Dr. Gross") appeal from the judgment entered by the circuit court on a jury verdict returned in favor of Supen Peze Stuart.  Upon consideration of the record, briefs, and argument of counsel, the Court is of the opinion that there is no reversible error in the judgment of the circuit court.

                                                    I.

        Stuart brought a medical malpractice action against Dr. Gross alleging that he negligently performed a blepharoplasty procedure,[1] resulting in permanent injury to the right levator muscle and leaving Stuart functionally blind in her right eye.  The jury returned a verdict in favor of Stuart and awarded $800,000 in compensatory damages.  The circuit court entered a judgment order, which was suspended by subsequent order to allow the filing of post-trial motions.  After briefing and argument on post-trial motions, the circuit court entered a final order denying the motions, and the previously suspended judgment order went into effect.  This appeal followed.

---

        [1] Blepharoplasty is a cosmetic procedure performed to remove puffiness, or excess skin and fat, from the upper eyelids.

II.

In his first assignment of error, Dr. Gross asserts that the circuit court erred in denying his motion in limine and in permitting Stuart to cross-examine the defense medical expert, Dr. John Pitman, regarding matters that were the subject of a disciplinary proceeding against Dr. Pitman.

A.

Prior to trial, Dr. Gross moved to exclude matters referenced in a consent order entered into by Dr. Pitman with the Virginia Board of Medicine (the "Consent Order"). Specifically, the Consent Order outlined the Board's findings of fact and conclusions of law with regard to certain instances in which Dr. Pitman violated the Virginia laws and regulations concerning his medical practice in Virginia that occurred in connection with his deployment to Afghanistan.[2] Dr. Gross argued that the evidence should be excluded on the grounds that it was not relevant, collateral to the relevant issues, and unduly prejudicial. The circuit court denied Dr. Gross's motion, finding the evidence relevant, and observing that Dr. Gross "can rehabilitate [Dr. Pitman] with whatever you need to on redirect" and instructed Stuart that "it shouldn't be mentioned in the voir dire or opening." The circuit court further instructed Stuart that she should advise the court before "going down that path."

At trial, Dr. Gross called Dr. Pitman as an expert and directed him to review with the jury his education, training, licensing, board certification, honors, awards, and teaching and practice experience. Dr. Pitman described his practice during military deployment, the number of his deployments, his treatment of combat injuries, and major reconstructions following combat type injuries.[3] In reliance on his background, knowledge, and experience, Dr. Pitman rendered several opinions, including that Dr. Gross complied with the standard of care.

---

[2] By signing the Consent Order, Dr. Pitman neither admitted nor denied the Board's findings of fact and conclusions of law.

[3] Additionally, Dr. Pitman's 11-page curriculum vitae was admitted, which contained extensive information regarding his professional background and experience, including his postgraduate training, military service, certifications, regional and national committee assignments, hospital affiliations, professional affiliations, honors and awards, academic appointments, national presentations, national courses, published abstracts, and published journal articles.

During Stuart's cross-examination, she advised the circuit court of her intention to ask Dr. Pitman "about a series of actions where he was cited by the board of medicine for violation of law and health regulations with regard to his practice" without asking Dr. Pitman about any sanctions. Over Dr. Gross's objection, the circuit court permitted Stuart to question Dr. Pitman about certain findings set forth in the Consent Order.

Stuart prefaced her inquiry by asking Dr. Pitman to agree that he had given certain opinions regarding "how you would expect a reasonably prudent surgeon to practice in Virginia," "that all doctors practicing in Virginia should practice within that standard," and "that practicing within the standard of care would include complying with state laws concerning the practice of medicine and regulations of the board of medicine." Without expressly referring to the Consent Order, Stuart then proceeded to ask Dr. Pitman whether during his deployment to Afghanistan, certain facts regarding his medical practice in Virginia were true. Stuart also asked Dr. Pitman to agree that he "had an opportunity to either admit or deny these allegations in an administrative hearing and [he] chose to not deny these allegations."[4] On redirect, Dr. Pitman addressed the matters raised by Stuart and explained the circumstances surrounding his deployment, the placement of his patients, and the status of his Virginia medical practice during his deployment.

### B.

We conclude the circuit court did not abuse its discretion in determining that this evidence was relevant to the jury in determining the weight accorded to Dr. Pitman's opinions and in permitting the cross-examination of Dr. Pitman on these matters.[5]

"With regard to the admission of evidence, the responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse."

---

[4] During Stuart's cross-examination, the circuit court sustained Dr. Gross's objection to Stuart's question whether a "senior investigator for the Department of Health Professions obtained a copy of [Dr. Pitman's] treatment record for a patient" and confirmed with Stuart that she would not, in further questioning, refer to the Department of Health Professions.

[5] Contrary to Dr. Gross's assertion otherwise, Rule 2:608 is not implicated because Stuart's inquiry into the findings contained within the Consent Order was not for the purpose of attacking Dr. Pitman's character for truthfulness.

*Lombard v. Rohrbaugh*, 262 Va. 484, 492 (2001) (citation omitted). "[W]hen a decision is discretionary . . . the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Martin v. Lahti*, 295 Va. 77, 88 (2018) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (citations and internal quotation marks omitted) (alteration in original). "A great deal must necessarily be left to the discretion of the [trial court], in determining whether evidence is relevant to the issue or not. Evidence is relevant if it has any logical tendency to prove an issue in a case." *John Crane, Inc. v. Hardick*, 283 Va. 358, 367 (2012) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197-98 (2010) (citation and internal quotation marks omitted) (alteration in original)).

Applying these principles, the circuit court acted within its discretion. Dr. Pitman rendered expert opinions regarding the standard of care in Virginia based on his background, knowledge and experience and provided the jury with a detailed account of his medical practice history including his military experience and numerous deployments. Dr. Pitman agreed that his opinions were based on how he would expect a reasonably prudent surgeon to practice in Virginia, that all doctors practicing in Virginia should practice within that standard, and that practicing within the standard of care would include complying with state laws concerning the practice of medicine and regulations of the board of medicine. Therefore, evidence of Dr. Pitman's adherence to the standard of care in Virginia and the laws governing his practice was relevant to the basis of his opinions and the weight to be accorded to his opinions by the jury.[6]

### III.

In his second assignment of error, Dr. Gross asserts that the circuit court erred in allowing Stuart to inject consent into the case by denying Dr. Gross's motions for mistrial and

---

[6] We reject Dr. Gross's argument that the evidence was inadmissible under *Stottlemyer v. Ghramm*, 268 Va. 7 (2004), where we held that "specific acts of bad conduct or prior acts of negligence are not relevant or admissible to show that a defendant was negligent and that such negligence was a proximate case of a plaintiff's injuries." *Id*. at 13. The evidence elicited during Stuart's cross-examination of Dr. Pitman did not involve acts of bad conduct or negligence on the part of a defendant to show that a defendant was negligent.

post-trial motions addressing its rulings on this matter and in refusing to provide instructions to the jury that consent was not at issue.

## A.

Prior to any witnesses being called at trial, Dr. Gross addressed the circuit court and Stuart with the concern that Stuart would attempt to elicit testimony from Dr. Malone that implied Dr. Gross exceeded the scope of consent. Stuart agreed that no issue of informed consent would be raised. Stuart called Dr. Malone to testify as a fact witness regarding his treatment of Stuart following the blepharoplasty, and as an expert witness on the issues of standard of care and causation. Dr. Malone testified that, in his opinion, the muscle in Stuart's right eye and tendon in her left eye were cut as the result of the failure of Dr. Gross to comply with the standard of care in Virginia. Stuart asked Dr. Malone: "Was there anything in Dr. Gross's office notes to indicate that he thought he was treating ptosis?" Dr. Malone replied: "He – he planned and got consent for a blepharoplasty."

Dr. Gross moved for a mistrial, arguing that Dr. Malone's response raised an issue of informed consent by implying that Dr. Gross exceeded the scope of the procedure to which Stuart consented. The circuit court denied the motion for a mistrial, but expressed concern that while Stuart did not make informed consent an issue, Dr. Malone's response implied "that somehow this defendant exceeded the scope of what was consented to." In light of this concern, the circuit court gave the following instruction to the jury: "I sustained an objection to the last question put to Dr. Malone. And the Court is instructing you that you should not consider any answer that Dr. Malone may have made to that last question."[7]

During closing argument, counsel for Stuart stated:

> [W]hen Ms. Stuart went to see Dr. Gross, she went for one reason. She went to have the puffiness removed from her eyes. That's the only reason she went there. We're here today because Dr. Gross performed the blepharoplasty . . . and then after he completed the blepharoplasty, he

---

[7] In addition to this language, Dr. Gross requested that the circuit court instruct the jury that "there is no issue in this case as to informed consent or that there is no issue that Stuart did not consent to the procedure performed." The circuit court declined to include that language in its instruction after expressing concern about bringing more attention to the issue of consent.

5

damaged the levator muscle in the right eye and the levator tendon in the left eye after he completed the blepharoplasty.

Dr. Gross objected on the grounds that the argument goes to exceeding the scope of consent. The circuit court agreed, stating, "The clear implication was that [Stuart] went [to Dr. Gross] for one procedure and got two, and it's the second one that causes us to be here." Dr. Gross renewed the motion for mistrial, which the circuit court denied. The circuit court gave the following instruction to the jury: "Ladies and gentlemen, the objection that was just made by the defendant is sustained. You are to disregard the last statement, and I'll ask [counsel] to please rephrase at this time."[8] The circuit court also directed counsel "not to argue anything that will imply that [Stuart] came in for one thing allowing the jury to infer that somehow against her will or without cause or anything else had that second exploration."[9]

### B.

We conclude that the circuit court did not abuse its discretion in denying the motions for a mistrial and post-trial motions addressing these rulings, or in failing to instruct the jury that consent was not an issue in the case.

"A trial court's ruling denying a motion for mistrial will be set aside on appellate review only if the ruling constituted an abuse of discretion." *Allied Concrete Co. v. Lester*, 285 Va. 295, 308 (2013) (citation and internal quotation marks omitted). "This broad discretionary power reflects in part the principle that a jury is presumed to have followed a timely and explicit cautionary instruction directing it to disregard an improper remark or question by counsel." *Lowe v. Cunningham*, 268 Va. 268, 272 (2004). "[A]bsent a manifest probability of prejudice to an adverse party, a new trial is not required when a court sustains an objection to an improper remark or question by counsel and thereafter instructs the jury to disregard the remark or question." *Id.* (citations omitted). However, where the prejudicial effect of an improper remark or question is overwhelming and cannot be cured by a cautionary instruction, the court is required to grant a new trial. *Id.*

---

[8] The circuit court declined Dr. Gross's request to inform the jury that Stuart "is not claiming in this lawsuit that Dr. Gross performed any procedure on her without her consent."
[9] Dr. Gross also made post-trial motions to set aside the verdict and for a new trial.

> The trial court's determination whether a statement or question of counsel is so inherently prejudicial that the prejudice cannot be cured by a cautionary instruction must be guided by a consideration of several factors. These factors include the relevance and content of the improper reference, and whether the reference was deliberate or inadvertent in nature. The court also must consider the probable effect of the improper reference by counsel. All these factors must be considered because not every irrelevant statement or question will result in prejudice to an opposing party. To justify a new trial, the nature of counsel's improper reference must be "likely to inflame the passion or instill a prejudice in the minds of the jury." *Virginia-Lincoln Furniture Corp. v. Southern Factories & Stores Corp.*, 162 Va. 767, 781 (1934).

*Id.* at 273 (citations and internal quotation marks omitted).

Applying these principles, the circuit court acted within its discretion. The first motion for mistrial was made in response to Dr. Malone's statement that Dr. Gross "planned and got consent for a blepharoplasty." Dr. Malone did not testify that Dr. Gross failed to obtain informed consent and the circuit court found that Stuart did not make informed consent an issue. In determining how to address Dr. Malone's response, the circuit court considered the effect of the statement as well as the possibility of bringing more attention to the issue of consent and instructed the jury to disregard Dr. Malone's response. The second motion for mistrial was based on Stuart's argument that she went to Dr. Gross "for one reason." The circuit court instructed the jury to disregard the remarks and directed counsel for Stuart "not to argue anything that will imply that [Stuart] came in for one thing allowing the jury to infer that somehow against her will or without cause or anything else had that second exploration." The record demonstrates that in both instances, the circuit court considered the probable effect of the statements, concluded that the statements were not overwhelmingly prejudicial, and that any prejudicial effect could be cured by the instructions given to disregard the statements.[10] No abuse of the circuit court's discretion in dealing with these matters has been shown.

---

[10] Our resolution of Dr. Gross's first two assignments of error renders it unnecessary to address his third assignment of error that the circuit court erred in ruling it lacked authority to address his post-trial motions.

IV.

For the foregoing reasons, we affirm the judgment of the circuit court.

This order shall be published in the Virginia Reports and certified to the said circuit court.

JUSTICE McCULLOUGH, with whom JUSTICE POWELL joins, concurring.

I join the majority opinion. I write separately to emphasize a point concerning the first assignment of error. Relying on the abuse of discretion standard, the Court affirms the trial court's decision to permit cross-examination of an expert based on adverse findings made in a professional disciplinary proceeding. The credibility of an expert is often of paramount significance. The fact that an expert has been subjected to professional discipline can be more or less relevant to the expert's credibility. An unbounded approach to impeachment in such matters, however, could unfairly prejudice a party and distract the jury. To guard against these dangers, trial judges should exercise their broad discretion to restrict, where appropriate, the scope of this type of impeachment. *See Lombard v. Rohrbaugh*, 262 Va. 484, 492 (2001) ("[T]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.").

<br>

A Copy,

Teste:

Douglas B. Robelen, Clerk

8