PRESENT:  Goodwyn, Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Millette, S.J.

DEBORAH C. GRAVES

v.  Record No. 191500

OPINION BY
JUSTICE WILLIAM C. MIMS
December 10, 2020

SAMANTHA SHOEMAKER

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Melvin R. Hughes, Jr., Judge Designate

In this appeal, we consider whether the Circuit Court of Albemarle County abused its discretion in ruling that a plaintiff in a personal injury case could not cross-examine the defense's expert witness on his prior financial relationship with the defendant's insurer.

I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

In December 2015, Deborah Graves was driving in Charlottesville when she was hit from behind by Samantha Shoemaker.  In the months following the crash, Graves experienced back, hip, and neck pain, as well as increased depression and anxiety, leading her to seek medical care and physical therapy that cost more than $26,000.  Graves initiated a suit against Shoemaker in the Circuit Court of Albemarle County, seeking $150,000 in damages.

State Farm insured Shoemaker at the time of the accident and hired John P. Cattano to represent her in the tort action.  Cattano engaged Dr. William C. Andrews, an orthopedic surgeon who specializes in medicolegal work, as the defense's expert witness.  Dr. Andrews reviewed Graves' medical records and prepared a written report.  He opined that the car accident only caused minor injury to Graves and that much of the pain she complained of following the crash was caused by conditions that pre-existed the accident.  He also found that most of the treatment Graves received after the accident would not have been medically necessary or reasonable to

treat the minor injuries she received. Dr. Andrews issued a bill in the amount of $3,362 to Cattano's office for his initial work on the case, which was later paid by State Farm.

Shoemaker's counsel deposed Dr. Andrews in preparation for trial. During the deposition, Dr. Andrews said that he had been hired by Cattano or his firm "30 to 35" times over the past 10 to 12 years and that on only one of those occasions did he testify on behalf of a plaintiff. He also acknowledged that State Farm had paid him $793,198 for testimony he provided for their insureds from 2012 to 2018. However, he claimed that he was not aware that Shoemaker was insured by State Farm until her counsel told him during the deposition. He explained that he had been retained by Cattano, not by State Farm directly.

The case went to trial on the issue of damages only, as Shoemaker admitted her fault in causing the accident. Graves made a pre-trial motion in limine seeking the court's permission to introduce evidence of Dr. Andrews' previous relationship with Cattano's firm and State Farm. She asserted that it was admissible under this Court's decision in *Lombard v. Rohrbaugh*, 262 Va. 484 (2001). After hearing arguments from counsel, the court determined that Graves could introduce evidence that Dr. Andrews had testified on behalf of Cattano's clients 30 to 35 times in the past. However, she would not be allowed to ask him about his prior work for State Farm because there was no "direct relationship" between Dr. Andrews and the insurance company. In reaching this decision, the court cited the fact that Cattano, not State Farm, hired Dr. Andrews and was billed for his work. The court also noted Dr. Andrews' contention that he did not know State Farm would ultimately pay his bill when he wrote his report. Thus, the court found, Dr. Andrews was "in a distinctly different position than was the expert in *Lombard*."

At trial, Dr. Andrews testified as the defense's sole witness. The jury returned a verdict in favor of Graves in the amount of $3,000, plus interest. Graves moved for a new trial based

upon the court's pre-trial ruling that prevented her from presenting evidence concerning Dr. Andrews' relationship with State Farm. The court denied the motion.

We awarded Graves this appeal.

## II. ANALYSIS

Graves asserts that the circuit court erred in deciding to exclude evidence of Dr. Andrews' relationship with State Farm because it violated this Court's ruling in *Lombard v. Rohrbaugh*, 262 Va. 484 (2001). She argues that the court misinterpreted *Lombard* as holding that a party must demonstrate a "direct relationship" between an expert and an insurance company before cross-examining the expert on previous payments from the insurance company. We agree.

This Court reviews a trial court's evidentiary rulings for abuse of discretion. *Hyundai Motor Co. v. Duncan,* 289 Va. 147, 155 (2015). An abuse of discretion can occur in three principal ways: "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011). A court abuses its discretion when it incorrectly ascertains what the law requires. *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013).

We first considered the cross-examination of expert witnesses regarding their relationship with insurance companies in *Lombard*. That case was decided before this Court adopted the Virginia Rules of Evidence in September 2011, but it relied on evidentiary law that formed the basis for the Rules. While "all relevant evidence" is generally admissible under Rule 2:402, several rules constrain this broad instruction. Under Rule 2:403, a court may exclude relevant

evidence if "the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice." Likewise, Rule 2:411 provides that evidence that a person was or was not insured is generally inadmissible, but exclusion is "not required when offered for another purpose, such as proof of . . . bias or prejudice of a witness."

In *Lombard*, 262 Va. at 490–91, the trial court allowed the plaintiff to cross-examine an expert who had been hired by the defendant's insurance company on payments he had received from the company for testifying in previous cases, more than $100,000 per year for two years. We ruled that it was not an abuse of discretion for the circuit court to allow admission of this evidence. *Id.* at 498. The "crux of the issue" in determining whether the evidence should be admitted is "whether there is a substantial relationship between the witness and a particular insurance carrier that has a financial interest in the outcome of the case." *Id.* at 496. If the plaintiff can demonstrate a substantial relationship, "its probative value concerning potential bias or prejudice outweighs any prejudice to the defendant resulting from the jury's knowledge that the defendant carries liability insurance." *Id.* at 497. We found that there was a substantial relationship even though the expert was not an employee of the insurer, but only an independent contractor, as "the absence of an employer-employee relationship does not define the limits of cross-examination." *Id.* at 496.

Here, the circuit court erred by requiring a "direct relationship" between Dr. Andrews and State Farm. *Lombard* made clear that in determining whether there is a "substantial relationship" between an insurer and an expert, the central issue is not "artificial labels," but the "potential for bias because of the witness's interest in the case." *Id.* While the expert in *Lombard* was hired directly by the insurer and Dr. Andrews was originally retained by defense counsel, this is a distinction without a difference. It is not necessary that an insurer directly hire

4

an expert to establish a "substantial relationship," but only one of many factors that a trial court can consider.

An insurer's payment of a considerable sum of money to an expert for his prior testimony favorable to its insureds can be enough to establish a "substantial relationship" on its own. This was the case here, where Dr. Andrews received nearly $800,000 over the course of seven years from State Farm, an annualized amount similar to what the expert in *Lombard* received. The receipt of such a substantial amount by an expert is enough to create a potential for bias that outweighs any potential harm from the mention of insurance to a defendant. Furthermore, as we emphasized in *Lombard*, any potential prejudice to a defendant posed by the mention of insurance can be mitigated by giving a limiting instruction to the jury. *Id.* at 497.

If we were to adopt the position advocated by the appellee, defendants could avoid cross-examination on potential expert bias resulting from a prior relationship with an insurance company simply by having the defense attorney retain the expert rather than having the insurance company retain the expert directly. Such an outcome would effectively deny plaintiffs their "right to establish that a witness is biased." *Sawyer v. Comerci*, 264 Va. 68, 77 (2002).

Moreover, the issue of Dr. Andrews' bias was a consideration for the jury. Dr. Andrews alleges that he was not aware that State Farm would benefit from his testimony when he wrote his report. The plausibility of that assertion rested on his credibility, which the jury was entitled to consider given his experience working with insurers and defense attorneys. *See Gray v. Commonwealth*, 233 Va. 313, 344 (1987) ("It is a jury's function to judge the credibility of the witnesses and the weight of their evidence. The jury has the opportunity to observe the witnesses' demeanor while testifying, to consider their interest in the outcome of the case, and to determine from all the circumstances of the case which witnesses are more believable.").

## III.  CONCLUSION

For the above reasons, we hold that the Circuit Court of Albemarle County abused its discretion in denying Graves' motion in limine to introduce evidence regarding Dr. Andrews' financial relationship with State Farm.  We therefore vacate its judgment and remand for further proceedings.

*Vacated and remanded.*