COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Petty and McCullough
Argued by teleconference


EDWIN NOE GARCIA

OPINION BY
v.      Record No. 0343-11-4      JUDGE STEPHEN R. McCULLOUGH
JUNE 5, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

Bonnie H. Hoffman, Deputy Public Defender (Lorie E. O'Donnell,
Public Defender, on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Edwin N. Garcia asks the Court to reverse his convictions, arguing that the trial court erred

when it refused to strike a prospective juror for cause. We disagree and affirm.

BACKGROUND

Garcia was charged with assault and battery of a law enforcement officer, resisting arrest,

two counts of obstruction of justice, and appearing intoxicated in public. He elected to be tried by a

jury. During the process of jury selection, the trial court asked the following question of the venire:

"[n]ow is there any other reason that we have discussed . . . why you can't give this case your full

and undivided attention and render a fair and impartial verdict?" A member of the venire,

Ms. Bergy, indicated that she did and that she "would rather share it privately." She explained that

> I am just concerned that I live very close to the area where the
> events in question occurred. I am just a little concerned that there
> would be family members or friends who would be seeking me out
> since I am on the jury, or, you know - - I don't know if that is a
> reasonable - -

The following exchange then took place:

THE COURT:  Oh, I see.  Your concern is about if you sat in judgment in this case because you live close by.

MS. BERGY:  I don't think I know anybody who knows the man on trial, but I don't know.

THE COURT:  Did you have questions?

[COMMONWEALTH'S ATTORNEY]:  No, Judge.

THE COURT:  Questions?

[DEFENDANT'S ATTORNEY]:  Do you believe that that may affect your ability to pay attention to the case?  Would your mind be with your family and your safety concerns?

MS. BERGY:  Slightly.  I just thought I should bring it up.

THE COURT:  If you live close to the area, do you feel you really feel - - on a scale of 1 to 10 that you would be a 10?

MS. BERGY:  Yes.

THE COURT:  Do you go there quite often or familiar with - -

MS. BERGY:  Yes.  I would just be concerned if we lived in the same neighborhood or something possibly and I don't know if we do.

THE COURT:  Okay.

MS. BERGY:  Does that make sense?

THE COURT:  It does.

MS. BERGY:  Okay.

THE COURT:  I understand what you are saying.  Did you have any other questions?

[COMMONWEALTH'S ATTORNEY]:  I understand and appreciate your concerns, but do you believe you could provide your full time and attention to the testimony in the case?

MS. BERGY:  Yes.

[COMMONWEALTH'S ATTORNEY]:  And, would you decide the case based on the evidence in the courtroom?

MS. BERGY:  Yes.

[COMMONWEALTH'S ATTORNEY]:  And would you be fair and impartial to the Commonwealth and the Defendant, Mr. Garcia?

MS. BERGY:  Yes.  Most definitely.

THE COURT:  Thank you very much.

Counsel for the defendant argued that he "could see some visible fear in her, and the fact that she has indicated that she is fearful for her family, I think that is a hard thing for her to overcome and to sit on this jury."  The court responded that while Bergy appeared nervous, she did not appear fearful, and she had obviously "calmed herself down when she got up here after a while."  Defense counsel argued that "she has revealed a fear for her family" and that constituted "reason enough to strike her for cause."  The court declined to strike her for cause, noting that

> [s]he said she can be fair.  She said she would sit.  She was concerned.  I think her honesty is appreciated.  I'm not sure all jurors don't have some concerns about sitting as a juror in judgment of their peers.  I think her candor was, frankly, refreshing in the case.  I am not going to strike her for cause.

Bergy ultimately was removed by a peremptory strike.

Following his trial, Garcia was found not guilty of the appearing intoxicated in public charge and was convicted on all other charges.

## ANALYSIS

The constitutions of the United States and of Virginia protect a defendant's right in criminal cases to be tried by an impartial jury.  U.S. Const. amend. VI; Va. Const. art. I, § 8.  Virginia law goes beyond the protections afforded under federal law[1] by further providing that "[i]t is prejudicial

---

[1] See United States v. Martinez-Salazar, 528 U.S. 304, 317 (2000) ("[A] defendant's exercise of peremptory challenges pursuant to [Federal] Rule [of Criminal Procedure] 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause.").

error for the trial court to force a defendant to use peremptory strikes to exclude a venireman from the jury panel if that person is not free from exception." Townsend v. Commonwealth, 270 Va. 325, 329, 619 S.E.2d 71, 73 (2005).

In assessing potential jurors, trial courts must resolve "any reasonable doubt as to a juror's qualifications . . . in favor of the accused."[2] Breeden v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976). Once a trial court has resolved any such doubt and satisfied itself that a prospective juror will afford both parties a fair trial,

> [o]n appellate review, this Court must give deference to the circuit court's determination whether to exclude a prospective juror because that court was able to see and hear each member of the venire respond to questions posed. The circuit court is in a superior position to determine whether a prospective juror's responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath.

Green v. Commonwealth, 262 Va. 105, 115, 546 S.E.2d 446, 451 (2001).

The United States Supreme Court has aptly noted that

> [d]emeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying. Any complicated *voir dire* calls upon lay persons to think and express themselves in unfamiliar terms, as a reading of any transcript of such a proceeding will reveal. Demeanor, inflection, the flow of questions and answers can make confused and conflicting utterances comprehensible.

Patton v. Yount, 467 U.S. 1025, 1038 n.14 (1984). For this reason, a trial court's denial of a motion to strike a juror for cause "will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion." Barrett v. Commonwealth, 262 Va. 823, 826, 553 S.E.2d 731, 732 (2001).

---

[2] Of course, the Commonwealth may elect to try a case by jury and, in that situation, is no less entitled to an impartial jury than the accused. See Va. Const. art. I, § 8 (prosecution must concur in defendant's waiver of trial by jury); Hampton v. Commonwealth, 190 Va. 531, 548, 58 S.E.2d 288, 294 (1950) ("The Commonwealth, in all criminal cases, as well as an accused, is entitled to submit its case to a fair and impartial jury, free from legal disqualifications.").

Appellant argues that Bergy evinced "a certain bias against [him]."  He contends that Bergy "prejudged the case and found the Appellant guilty" and, moreover, that her fear was that "Appellant's friends and family would seek her out for revenge because she served on the jury [that] convict[ed] him."  Appellant's Br. at 6.  These arguments do not withstand scrutiny.  The compound question Bergy was asked was whether there existed a reason "[1] why you can't give this case your full and undivided attention and [2] and render a fair and impartial verdict."  In response, Bergy then expressed a "concern" that she "live[s] very close to the area where the events in question occurred."  This concern was hypothetical:  she did not know whether she lived near the crime scene and she did not think that she knew anybody who knew the defendant, but she was "not sure."  Her "concern" was that "family members or friends who would be seeking me out since I am on the jury."  In short, her concern was directed at the first part of the court's compound question, whether she could give the case her full and undivided attention, not the second part of the question, whether she would be fair and impartial.  Bergy's responses on their face do not lend themselves to extrapolations of bias and a predisposition to convict.  Nothing in Bergy's statements suggests that she would reflexively vote to convict.  None of her statements exhibit any bias.  A hypothetical "concern" about being approached by persons who are family or friends of a litigant, including the defendant himself, is not tantamount to bias.

Popular movies and fiction at times depict jurors being approached by persons who seek to influence their deliberations – a rare circumstance in actuality, but one that laypersons unfamiliar with the legal system easily might misapprehend.[3]  Nothing in Bergy's comments can be construed as bias or as prejudging the case for or against the defendant.

---

[3] For example, in the novel and movie *Runaway Jury*, by bestselling author John Grisham, members of the jury in a high profile case are subjected to attempts at bribery and blackmail.

In assessing Bergy's responses, we find apt the Supreme Court's observation that

> [p]rospective jurors represent a cross section of the community, and their education and experience vary widely. Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently. Every trial judge understands this, and under our system it is that judge who is best situated to determine competency to serve impartially.

Patton, 467 U.S. at 1039. The trial court, based on its observations of Bergy's demeanor and the totality of her responses, concluded that she was simply being candid about her concern about living in proximity to the crime scene and the possibility that she might be approached by outsiders. The trial court accepted as true her statement that she would consider the case based on the evidence presented in the courtroom and that she "[m]ost definitely" would "be fair and impartial to the Commonwealth and the Defendant." We find the trial court's assessment of Bergy's responses persuasive, and discern no manifest error amounting to an abuse of discretion in the court's refusal to strike her for cause.

Appellant seeks to analogize the facts at hand to Breeden, 217 Va. 297, 227 S.E.2d 734, where a juror believed "the fact that [the defendant] is here is [a] strong indication that he is guilty." Breeden, 217 Va. at 300 n.*, 227 S.E.2d at 736 n.* "It was in the face of this obviously impermissible statement of bias that the prosecutor's 'long, complex, leading questions' failed to rehabilitate the juror." Hopson v. Commonwealth, 52 Va. App. 144, 157 n.2, 662 S.E.2d 88, 95 n.2 (2008) (citing Breeden, 217 Va. at 300 n.*, 227 S.E.2d at 736 n.*). Here, in contrast, Bergy never manifested a bias against appellant or any notion that the defendant would have to establish his innocence. Breeden is plainly inapposite.

Finally, appellant contends that Bergy was not suitably "rehabilitated." First, the record does not reveal any objection on this point. Accordingly, the issue is not properly before us. See Rule 5A:18. See also Bell v. Commonwealth, 264 Va. 172, 196, 563 S.E.2d 695, 711 (2002)

(failure to object to trial court's use of leading questions to rehabilitate a juror waived the issue). Moreover, the premise behind the argument is mistaken. A juror who initially signals a basis for disqualification, perhaps due to ignorance, can be rehabilitated, provided that "proof of a prospective juror's impartiality . . . come[s] from his own mouth [rather than from the] predictable responses to persuasive suggestions from the attorney who attempts to rehabilitate the prospective juror." Bennett v. Commonwealth, 236 Va. 448, 469, 374 S.E.2d 303, 316 (1988). By the same token, suggestive questions from the trial court may not suffice in rehabilitating the member of the venire who has expressed a bias. McGill v. Commonwealth, 10 Va. App. 237, 242-43, 391 S.E.2d 597, 600 (1990). Proper rehabilitation is necessary only after a prospective juror has expressed a disqualifying comment. An abstract concern about living near the crime scene or the possibility of being contacted by outsiders does not stand on the same footing as comments that evince bias or partiality. The trial court correctly discerned that Bergy was simply being candid about her concern. In this situation, the strictures necessary for a proper rehabilitation are not implicated. Bergy's overall responses to the court's questions, combined with her assurance that she would "most definitely" be fair and impartial to the Commonwealth and to the defendant established her impartiality. No further rehabilitation was required.

## CONCLUSION

The trial court did not err in refusing to strike Bergy from the venire and we, therefore, affirm the judgment below.

Affirmed.