COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff,[*] Causey and White
Argued at Richmond, Virginia


RAYMOND JOHN VADNEY

                                                    MEMORANDUM OPINION[**] BY
v.        Record No. 0036-24-2                      JUDGE GLEN A. HUFF
                                                    JANUARY 28, 2025
IVY DYMACEK WOLFE


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

Drew D. Sarrett (Consumer Litigation Associates, P.C., on briefs),
for appellant.

Wm. Tyler Shands (Kerrigan O'Malley; Carter & Shands, PC, on
brief), for appellee.


Raymond J. Vadney ("appellant") sued Ivy D. Wolfe ("appellee") to recover damages he

allegedly sustained in a car accident. Appellee admitted liability and the matter proceeded to a

jury trial solely on the question of damages. Following deliberations, the jury awarded appellant

"zero dollars." After a subsequent hearing, the trial court granted appellant's motion to set aside

the verdict and ordered a new trial, again on damages only. The second jury found "for the

defendant," and the trial court denied appellant's motion for a third trial.

On appeal, appellant argues that the trial court erred during the second trial in (i) refusing

to strike three potential jurors for cause; (ii) excluding evidence showing the bias of appellee's

---

[*] Judge Huff prepared and the Court adopted the opinion in this case prior to the effective
date of his retirement on December 31, 2024.

[**] This opinion is not designated for publication. *See* Code § 17.1-413(A).

expert witness; and (iii) denying appellant's motions to set aside the jury verdict and order a new trial.[1]  Finding no error, this Court affirms the judgment below.

BACKGROUND[2]

In September 2017, appellee rear-ended a vehicle in which appellant was a passenger. Appellant immediately told the driver, his husband, that he felt pain in his neck, one of his shoulders, and his back.  The next day, Margaret Esposito, a physician's assistant at Commonwealth Primary Care, evaluated appellant and noted that he presented with neck and right shoulder pain and had recently been in a motor vehicle accident.  She also noted that appellant had full range of motion in his right shoulder.  For appellant's pain, Esposito prescribed medication, which appellant did not take, and physical therapy, which appellant did not do.  The visit cost appellant $148.

---

[1] On brief, appellee assigns cross-error to the trial court's order granting appellant's motion to set aside the first jury verdict as contrary to the evidence and law.

> A brief assigning cross-error must contain a "statement of the assignment of cross-error, with a clear and exact reference to the pages of the [record or] appendix where the alleged cross-error has been preserved," along with the "standard of review, the argument, and the authorities relating to each assignment of cross-error," which must be "stated in one place and not scattered through the brief."

*Lehmann v. WFV Holdings, LLC*, 80 Va. App. 802, 819 n.8 (2024) (quoting Rule 5A:21(e)). Because appellee's brief does not comply with these requirements, this Court declines to consider the substance of her assignment of cross-error. *Id.*

This Court additionally notes that appellee argues on brief that any error committed by the trial court in this matter constitutes harmless error.  Clearly that claim would resolve appellee's cross-appeal as well, considering that appellant was not awarded any damages on either trial.

[2] On appeal, this Court recounts the facts and "view[s] the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). Here, appellee is the prevailing party pursuant to the second jury's verdict in favor of "the defendant."

Approximately one month later, appellant saw Dr. Norman Boardman, an orthopedic surgeon, for a previously scheduled appointment regarding his left shoulder. Several months later, appellant returned to Dr. Boardman about increasing pain in his right shoulder following a lifting injury. In July 2018, Dr. Boardman performed surgery on appellant's right shoulder.

In June 2019, appellant sued appellee for negligence in the Circuit Court of Henrico County (the "trial court"), seeking damages for injuries sustained in the 2017 car accident. Appellee admitted liability, and the parties conducted a one-day jury trial on the question of damages.[3] The jury delivered a verdict assessing appellant's damages as "zero dollars" and awarding no interest. The trial court subsequently granted appellant's motion to set aside the verdict and ordered a "new trial on the amount of damages only."[4]

Before the second trial began, the parties disagreed about what portions of the *de bene esse* deposition of Dr. Paul Kiritsis, appellee's expert witness, should be played to the jury. Appellant sought to introduce the following statement made by Dr. Kiritsis to plaintiff's counsel after the deposition had ended:

> Drew, I've got to tell you, man. I've done a fair amount—like, you know, I've done some of this stuff, but I find that you doing this is disgusting, and it just, like, shows that you have zero taste, and like you're trying to rail me and—and—it is classless and—and just disgusting. . . . And I just—I don't know how you can—can consider yourself a professional. And, you know, I bust my ass at work, and for me doing this extra stuff to help put my kid through school, and you're trying to rake me over the coals as if I'm some sort of . . . .

---

[3] The Honorable James Stephen Yoffy presided over those proceedings.

[4] In setting aside the verdict, the trial court explained that it was "concerned about the issue of the testimony of the money that the doctor got pursuant to the new Supreme Court decision [*Graves v. Shoemaker*, 299 Va. 357 (2020),]" and it was also "concerned about the fact that [the jury] . . . could have [awarded] money because of just the shoulder or the neck pain."

- 3 -

Dr. Kiritsis did not make that statement in response to a question, and neither party asked him any questions after his statement. Rather, plaintiff's counsel simply responded: "Methinks the doctor protests too much. . . . Methinks the lady doth protest too much." The trial court precluded appellant from introducing those statements to the jury.

The parties further disagreed about whether appellant could admit a spreadsheet detailing Dr. Kiritsis's sources of medical-legal income as evidence of his alleged bias for the defense. The trial court ruled that appellant could present a version of the spreadsheet showing payments made to Dr. Kiritsis by State Farm, appellee's insurance carrier. But it also ordered appellant to redact the other payors' names from that document.

Explaining its reasoning, the court stated:

> Again, walking a tightrope, a fine line as to whether you lean one way or the other can be prejudicial to both sides, so I don't want to do anything to tip it way over in one way or the other, so I don't think it's appropriate to have Allen & Allen and all these various insurance companies.
>
> The type of work that [Dr. Kiritsis] does is obviously important and relevant but I think all these names being thrown around, that's prejudicial. We're going overboard.

Appellant acknowledged that he would not "fill the record with all these references to State Farm because the Court ha[d] already cautioned [him] about this." He further stated, however, that "[t]he questions is[:] was the doctor that was hired paid by the insurer and the answer is yes, that's the issue."

The parties then conducted voir dire on April 19, 2023, beginning with the trial court's general instructions and preliminary questions to the prospective jurors.[5] In particular, the court asked: "Is there anyone here who despite the Court's instructions you might not follow those

---

[5] The trial court initially noted that, "for the record, if the Court does not indicate any responses, that's because there was no response that required a further inquiry."

instructions -- the written instructions of law? What about if you don't agree with them. Is there anyone who would still not follow the written instructions?" No jurors made an affirmative response, and the trial court then questioned whether any juror "know[s] of any reason whatsoever why you cannot sit as a juror and give a fair and impartial trial to both parties based solely on the law and the evidence in this case? Anyone? All right. Thank you." Again, no jurors gave an affirmative response, and the court allowed appellant's attorney, Mr. Sarrett, to question the prospective jurors.

Mr. Sarrett first questioned whether any of the jurors would have "concerns about awarding a significant amount of money for medical expenses that were incurred in the past?" The record indicates no response from the venire. Mr. Sarrett then asked whether any juror thought "that because the Defendant admitted liability for whatever harm is caused by the [car] accident the Defendant should get credit for that?" Again, the record indicates no response from any juror.

Switching gears, Mr. Sarrett asked, generally, whether "anyone think[s] there are too many lawsuits?" Juror Number 24, Ms. Thompson, raised her hand, and Mr. Sarrett asked her individually why she "think[s] there are too many lawsuits." She responded: "Because who wouldn't want to get extra money. I think there's -- I don't know. I think sometimes it's part of life." What follows is the remaining exchange between Ms. Thompson and Mr. Sarrett on this topic:

> MR. SARRETT: So is it fair to say that you think there are a number of instances in which people sue just to get money and not because they are really harmed?
>
> MS. THOMPSON: Yes.
>
> . . . .

MR. SARRETT: What caused you to reach that conclusion that there are too many and people are seeking money when they are not really harmed?

MS. THOMPSON: I guess I've known of a couple people who have benefitted from it.

MR. SARRETT: Are you saying you know someone who's benefitted from a lawsuit in which you think that they weren't actually harmed to the extent that they benefitted?

THE COURT: Mr. Sarrett, I'm going to ask you to move on . . . [f]rom honing in on this one particular juror and more specifics.

After the trial court cut off the questioning of Ms. Thompson, Mr. Sarrett asked whether any other prospective juror agreed "with what Ms. Thompson just shared with us?" Juror Number 11, Ms. Jones-Sudlow, raised her hand and stated:

I agree because I'm in a situation myself with a home that I own and a slip and fall on a snowy day and it was an Amazon worker and it was obvious that he made the wrong decision to cross over into my yard on snow. My driveway was clear. You want anything else?

Mr. Sarrett and Ms. Jones-Sudlow continued to discuss this matter, as follows, until the trial court interrupted:

MR. SARRETT: So am I correct that you are actually a Defendant in a civil lawsuit right now involving a slip and fall accident at your home?

MS. JONES-SUDLOW: Yes.

MR. SARRETT: And where is that case pending?

MS. JONES-SUDLOW: New Jersey.

MR. SARRETT: New Jersey. So did you move down from New Jersey to Virginia after that incident?

MS. JONES-SUDLOW: I still own the home.

MR. SARRETT: Okay. And in view of the fact that you're a defendant in this lawsuit that you think is, shall we say, frivolous?

- 6 -

> MS. JONES-SUDLOW: You can use that word.
>
> MR. SARRETT: Okay. Your experience is that you're a defendant in a frivolous lawsuit, right?
>
> MS. JONES-SUDLOW: Someone who is an adult who can use common sense and I'm sure that --
>
> THE COURT: Ma'am, I'm going to interrupt you, and I apologize. We're getting too far into the specifics. The proper question would be, would that situation and her experience in the lawsuit prevent her from being able to be fair and impartial as a juror here today.

Despite stating his understanding of the trial court's advisement, Mr. Sarrett then asked Ms. Jones-Sudlow: "[g]iven your experience, would it be hard for you to put the plaintiff and the defendant in this lawsuit on equal footing right from the start?" Appellee's attorney immediately objected, stating: "Your Honor just asked him how to ask the question and he asked a different question[.]"

At that point, the trial court asked the question itself: "I just need to know, Ms. Jones-Sudlow, if your experience as a defendant in a case would prevent you from being able to sit today as a fair and impartial juror." Ms. Jones-Sudlow replied, "Fair and impartial," to which the trial court responded, "Thank you. We can move on." Following the court's directive, Mr. Sarrett next asked the venire whether "anyone else share[s] any concerns that Ms. Jones-Sudlow just expressed?" Juror Number 28, Ms. Wile, raised her hand. Before she was even asked any follow-up question about her beliefs, she stated: "I can cut to [the] chase and say what question she just asked, my answer would be I think I can be impartial."

The court thanked Ms. Wile for her answer, but permitted Mr. Sarrett to ask one follow-up question, which led to the following conversation:

> MR. SARRETT: So am I right that you believe that there are a substantial number of frivolous lawsuits, but in this case, notwithstanding that belief, you could set it aside --
>
> MS. WILE: Absolutely. Yes to all of that.

MR. SARRETT: Thank you, ma'am. I appreciate you raising your hand and telling me that. . . . Does anyone else have similar feeling to those expressed by Ms. Jones-Sudlow, Ms. Thompson and Ms. Wile?

A JUROR: I plan to be impartial too.[6]

MR. SARRETT: Okay. So notwithstanding your personal experience and feelings, you will try to be impartial?

A JUROR: Yes.

Mr. Sarrett's final questions to the venire related to whether any of the prospective jurors had either worked for VCU Health, OrthoVirginia, or Bon Secours, or received treatment from Dr. Kiritsis or Dr. Boardman. None of the jurors answered affirmatively to those inquiries.

Following several questions posed by appellee's attorney, the trial court concluded voir dire by asking "one last question[,] . . . in reflecting on your answers and the questions, do any of you know any reason whatsoever why you cannot sit as a fair and impartial juror to give a fair and impartial trial to both sides based solely on the law and evidence in the case? Anyone?" Receiving no affirmative response from the venire, the trial court briefly excused the prospective jurors from the courtroom. Appellant then moved to strike three of the potential jurors for cause—Ms. Thompson, Ms. Jones-Sudlow, and Ms. Wile.

Based on those jurors' opinions regarding the volume of lawsuits in general, appellant argued that they could not be fair and impartial in this specific case. Regarding Ms. Wile, appellant asserted that,

> notwithstanding the generic statement that she can be fair and impartial, it's clear that there is a bias against lawsuits generally and plaintiffs generally because if you think that there are too many frivolous lawsuits, you just can't let go of that . . . and come

---

[6] The record does not definitively clarify the identity of this juror, but that individual's responses are useful to this Court in considering the entire context of the voir dire as it occurred before the trial court. *See Juniper v. Commonwealth*, 271 Va. 362, 401 (2006) (instructing this Court to consider the "entire *voir dire*, not just isolated portions").

in and say, well, even though I think all these people in the world file bogus lawsuits, I won't think that this plaintiff does that.

Appellant likewise noted that Ms. Thompson and Ms. Jones-Sudlow held those same general beliefs, which were only strengthened by their respective experiences. For Ms. Thompson it was her "personal experience with individuals who filed lawsuits when they weren't really harmed and that they got money that they did not deserve." For Ms. Jones-Sudlow it was her status as a defendant in a pending civil lawsuit "that she considers to be frivolous."

In response, appellee claimed that each of these prospective jurors affirmed that they could be fair and impartial. Without elaboration, the trial court denied appellant's motions. Appellant subsequently used two of his peremptory strikes against Ms. Thompson and Ms. Jones-Sudlow. The court seated Ms. Wile as one of seven jurors.

At trial, Dr. Boardman highlighted the "temporal relation" between the accident and appellant's pain. On cross-examination, he admitted that medical providers "take the history from what the patient gives." Dr. Kiritsis testified that he believed that the accident caused appellant a neck strain and headache but not a shoulder injury. On cross-examination, he conceded that (i) State Farm paid him more than $100,000 between 2016 and 2020 and more than $40,000 in 2020 alone; (ii) he received $216,448.52, $141,292.20, and $96,425 in 2020, 2019, and 2018, respectively, for his medical-legal work on behalf of defendants generally; and (iii) Carter & Shands had hired him to testify either eight or nine times.

At the end of the second trial, the jury unanimously "found for the defendant" and therefore awarded appellant no damages. Appellant moved for a new trial and to set aside the verdict as contrary to the law and evidence. The trial court denied both motions.

This appeal followed.

ANALYSIS

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (alteration in original) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). "[T]he party seeking reversal bears the burden to demonstrate error on the part of the trial court." *Id.* at 272-73 (quoting *Barker v. Barker*, 27 Va. App. 519, 535 (1998)). For the following reasons, this Court finds no basis for reversing the judgment below.

I. <u>Motions to Set Aside the Second Verdict and Grant a Third Trial</u>

Appellant argues that "the Trial Court committed reversible error in refusing to set aside the jury's verdict as contrary or unsupported by the evidence, as [he] produced sufficient evidence to require the jury to award him damages." In support of this claim, he relies upon the following evidence: (1) "unrebutted testimony" from his spouse that he "experienced neck pain and headache immediately after the collision" and received treatment for it the following day; (2) the Commonwealth Primary Care bill showing that appellant experienced continued pain the day after the accident; and (3) Dr. Kiritsis's testimony that he believed the car accident had caused appellant a neck strain and headache.

"When a jury has returned a zero dollar verdict, the issue is whether plaintiff 'produced sufficient evidence to *require* the jury to award [him] damages.'" *Gilliam v. Immel*, 293 Va. 18, 24 (2017) (quoting *Mastin v. Theirjung*, 238 Va. 434, 437 (1989)). "[I]n the context of an automobile accident case, an admission of liability relieves the plaintiff of the burden of proving that the defendant was negligent and that defendant's negligence was a proximate cause of the accident. An admission of liability, however, does not admit compensable damage." *Shumate v. Mitchell*, 296 Va. 532, 550 (2018) (quoting *Gilliam*, 293 Va. at 26 n.7). A jury can validly award a plaintiff nothing when, for example, it believes the plaintiff is "feigning or exaggerating [his] injuries." *Id.* at 551 (quoting *Gilliam*, 293 Va. at 25).

- 10 -

When a party appeals a jury verdict approved by the trial court, "[t]he trial court's judgment is presumed to be correct, and we will not set it aside unless the judgment is plainly wrong or without evidence to support it." *Xspedius Mgmt. Co. of Va., L.L.C. v. Stephan*, 269 Va. 421, 424-25 (2005) (quoting *Stanley v. Webber*, 260 Va. 90, 95 (2000)). "We view the evidence and all reasonable inferences fairly deducible from it in the light most favorable to the prevailing party at trial. We review matters of law de novo." *Bennett v. Sage Payment Solutions, Inc.*, 282 Va. 49, 54 (2011) (quoting *Syed v. ZH Techs., Inc.*, 280 Va. 58, 68 (2010)). If the testimony conflicts

> on a material point, or if reasonably fairminded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed.

*Gilliam*, 293 Va. at 24 (quoting *Hall v. Hall*, 240 Va. 360, 363 (1990)). Thus, "every reasonable inference must be drawn in favor of a verdict that has been rendered fairly under proper jury instructions." *Hall*, 240 Va. at 363 (citing *Forbes & Co. v. Southern Cotton Oil Co.*, 130 Va. 245, 259 (1921)).

Here, appellant has failed to demonstrate that his evidence "*require[d]* the jury to award [him] damages." *Gilliam*, 293 Va. at 24 (quoting *Mastin*, 238 Va. at 437). He relies heavily on the $148 bill from Commonwealth Primary Care, in which Esposito notes that appellant complained of neck and shoulder pain the day after the accident. Nevertheless, appellant's own expert witness, Dr. Boardman, testified that medical providers "take the history from what the patient gives you." Thus, the jury was not "required" to accept the invoice as establishing a causal connection between the accident and the pain appellant reported. Furthermore, Dr. Boardman highlighted the fact that a "temporal relation" between the accident and appellant's pain does not necessarily indicate a *causal* relationship. Indeed, in considering

- 11 -

appellant's refusal to take medication or undergo physical therapy for his pain, the jury could have concluded that he was "feigning or exaggerating [his] injuries." *See Shumate*, 296 Va. at 551.

Jury instruction six, which was submitted without objection, informed the jury that "the only issue [it] ha[d] to decide is the amount of damages, *if any*, the plaintiff is entitled to recover." (Emphasis added). As noted above, "if reasonably fairminded men may differ as to the conclusions of fact to be drawn from the evidence, . . . the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by this [C]ourt." *Gilliam*, 293 Va. at 24 (alteration in original) (quoting *Hall*, 240 Va. at 363). Given the above circumstances, appellant has failed to demonstrate that his evidence "*require[d]* the jury to award [him] damages." *Gilliam*, 293 Va. at 24 (quoting *Mastin*, 238 Va. at 437). Thus, the trial court did not err by denying his motion to set aside the jury's verdict.

II. Evidence of Dr. Kiritsis's Potential Biases

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Amonett v. Commonwealth*, 70 Va. App. 1, 9 (2019)). A reviewing court can conclude that an abuse of discretion has occurred only in cases in which "reasonable jurists could not differ" about the correct result. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

a. Dr. Kiritsis's Post-Deposition Statement

Appellant argues that the trial court abused its discretion in accepting appellee's proposed version of Dr. Kiritsis's *de bene esse* deposition instead of the full version proposed by appellant. He argues that Dr. Kiritsis's "angry outburst . . . undercut his self-presentation as a neutral evaluator of [appellant's] injuries, . . . damaged his overall credibility," and "established his bias

- 12 -

and lack of credibility and objectivity." Appellant also alleges that the court's "email conveying its decision to exclude swaths of Dr. Kiritsis' testimony provided no explanation" for how the evidence was subject to exclusion under Virginia Rule of Evidence 2:403.

"The bias of a witness, like prejudice and relationship, is not a collateral matter. . . . [T]he general rule is that anything tending to show bias on the part of a witness may be drawn out." *Sawyer v. Comerci*, 264 Va. 68, 78 (2002) (quoting *Henning v. Thomas*, 235 Va. 181, 188 (1988)). "A witness' credibility may, in part, be determined by his appearance and demeanor upon testifying." *Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 381 (1987). However, "[r]elevant evidence may be excluded if: (a) the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact; or (b) the evidence is needlessly cumulative." Va. R. Evid. 2:403.

The trial court did not abuse its discretion in excluding Dr. Kiritsis's statement, which did not relate to the case or show bias towards appellee or against appellant. Indeed, Dr. Kiritsis's comments (e.g., "you're trying to rail me [and] it is classless . . . and just disgusting," "I bust my ass at work . . . to help put my kid through school") were made *after* the deposition had ended and appellee had shifted the discussion to validating the deposition. Thus, appellant's reliance on cases where a witness displays anger *during* testimony is misplaced. *See Gray v. Commonwealth*, 233 Va. 313, 344 (1987). The trial court did not abuse its discretion by excluding an irrelevant statement.

### b. The Spreadsheet of Dr. Kiritsis's Income

Next, appellant argues that the trial court "committed reversible error in broadly excluding the defense firm and insurance company sources of Dr. Kiritsis' hundreds of thousands in medico-legal income and his cross-examination testimony on this issue." According to appellant, the ordered redaction of specific entities "from Dr. Kiritsis' medico-legal

income spreadsheet eliminated proof that [the doctor] overwhelmingly, if not entirely, testified against personal injury plaintiffs on behalf of dozens of insurers and insurance defense firms." He asserts that such evidence of Dr. Kiritsis's "overwhelming tendency to testify for defense firms and insurers . . . was 'highly prejudicial' to [the witness's] credibility" and that disclosure of all payment sources would not have been unduly prejudicial. Op. Br. 17 (quoting *Lee v. Spoden*, 290 Va. 235, 252 (2015)).

As stated above, "[a]ll relevant evidence" is generally admissible "except as otherwise provided by the Constitution of the United States, the Constitution of Virginia, statute, Rules of the Supreme Court of Virginia, or other evidentiary principles." Va. R. Evid. 2:402(a); *see also* Va. R. Evid. 2:402(b) (categorically prohibiting the admission of any polygraph examinations). For example, any "[e]vidence that a person was or was not insured is not admissible on the question [of] whether the person acted negligently or otherwise wrongfully, and not admissible on the issue of damages." Va. R. Evid. 2:411. That rule "is based on the theory that such evidence tends to unduly influence the jury [o]n behalf of the plaintiff." *Lombard v. Rohrbaugh*, 262 Va. 484, 493 (2001) (quoting *Highway Express Lines, Inc. v. Fleming*, 185 Va. 666, 672 (1946)).[7]

Nevertheless, "exclusion of evidence of insurance is not required when offered for another purpose, such as proof of . . . bias or prejudice of a witness." Va. R. Evid. 2:411. This exception is based on "the well settled rule that a litigant has a right to establish facts and circumstances tending to show the interest, bias or prejudice of a hostile witness." *Lombard*, 262

_____

[7] Although "decided before th[e] Court adopted the Virginia Rules of Evidence in September 2011," the *Lombard* decision "relied on evidentiary law that formed the basis for the Rules." *Graves*, 299 Va. at 361. Specifically, the Court "reaffirm[ed] the general principle that evidence as to whether a defendant did or did not carry liability insurance is generally irrelevant and inadmissible in a trial to address issues of negligence, causation, and damages." *Lombard*, 262 Va. at 497.

- 14 -

Va. at 494.[8]  Thus, admission of insurance evidence is not reversible error where "[t]he facts tending to show the interest or bias of the witness cannot be admitted without establishing the fact that the defendant carried liability insurance." *Id.*  This principle does not extend, however, to the admission of insurance evidence that is unrelated to the witness's "interests in the case" or that runs afoul of Rule 2:403. *Id.* at 496.

Regarding the first part of that inquiry, the Supreme Court has held that "[t]he 'crux of the issue' in determining whether the evidence should be admitted is 'whether there is a substantial relationship between the witness and a *particular* insurance carrier that has a financial interest in the outcome of the case.'"  *Graves v. Shoemaker*, 299 Va. 357, 362 (2020) (emphasis added) (quoting *Lombard*, 262 Va. at 496).[9]  Here, State Farm is the only insurance carrier that fits this criterion in connection with Dr. Kiritsis.[10]  And the trial court did not exclude such evidence.

Turning to the second part of the admissibility inquiry, Rule 2:403 authorizes a trial court to exclude relevant evidence if "(a) the probative value of the evidence is substantially

---

[8] In *Lombard*, the Supreme Court "considered the cross-examination of expert witnesses regarding their relationship with insurance companies." *Graves*, 299 Va. at 361.  There, the Court held that the trial court did not abuse its discretion in allowing "the plaintiff to cross-examine an expert [witness] who had been hired by the defendant's insurance company on payments he had received from the company for testifying in previous cases." *Id.* at 362.

[9] *Fleming* provides a good example of such substantial relationship where the witness in question was a paid employee of the insurance company and was "introduced by the defendant in an attempt to discredit or impeach the testimony of numerous witnesses introduced by plaintiff." 185 Va. at 672-73.  "The jurors, in deciding whether defendant was negligent, had to determine what weight, if any, they must give to the testimony of the agent for the insurance carrier." *Id.* at 673.  "Under those circumstances, the jurors were entitled to know his interest or bias and his relation to the party ultimately liable." *Id.*

[10] In making such determination, "the central issue is not 'artificial labels,' but the 'potential for bias because of the witness's interest in the case.'"  *Graves*, 299 Va. at 362 (quoting *Lombard*, 262 Va. at 496).  Thus, whether an expert witness "was hired directly by the insurer" or "originally retained by defense counsel, . . . is a distinction without a difference." *Id.*

outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact; or (b) the evidence is needlessly cumulative." Indeed, a trial court should not exclude evidence merely because it is prejudicial, as "all probative direct evidence generally has a prejudicial effect to the opposing party." *Lee*, 290 Va. at 251 (citing *Powell v. Commonwealth*, 267 Va. 107, 141 (2004)). "[T]he mere fact that evidence is highly prejudicial to a party's claim or defense is not a proper consideration in applying the balancing test. Rather, a trial court must determine whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects." *Id.* at 252 (citing *Gamache v. Allen*, 268 Va. 222, 227 (2004)). "The term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt [or liability] on a ground different from proof specific to the [case elements]." *Id.* at 251 (alterations in original) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). In other words, it represents "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* at 251-52 (quoting *Old Chief*, 519 U.S. at 180).

On the record here, the trial court merely noted that allowing the jury to see the other payors' names would be "prejudicial." Notwithstanding that determination, the trial court gave appellant substantial leeway to inquire into Dr. Kiritsis's bias on cross-examination. Indeed, appellant presented evidence and elicited testimony regarding Dr. Kiritsis's financial relationship with appellee's insurer—State Farm—as well as with defense law firms. Moreover, the court permitted appellant to introduce the spreadsheet containing Dr. Kiritsis's documented income from other sources who names were redacted. Therefore, this Court is not convinced that such ruling constitutes an abuse of discretion under the standard articulated by the Supreme Court in *Lombard* and *Graves*. But even if it were, any such error was harmless.

An appellate court "will not reverse a trial court for evidentiary errors that were harmless to the ultimate result." *Carter v. Commonwealth*, 293 Va. 537, 544 (2017) (quoting *Shifflett v. Commonwealth*, 289 Va. 10, 12 (2015)). "Under the harmless error doctrine, if there was 'a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.'" *Shifflett*, 289 Va. at 12 (alterations in original) (quoting Code § 8.01-678). "[W]e apply the standard for non-constitutional harmless error, which is that such error is harmless if we can be sure that it did not 'influence the jury' or had only a 'slight effect.'" *Carter*, 293 Va. at 545 (alteration in original) (quoting *Shifflett*, 289 Va. at 12). The erroneous exclusion of evidence can nevertheless be harmless if its admission would have been merely cumulative of other admitted evidence. *See Schwartz v. Schwartz*, 46 Va. App. 145, 159-60 (2005).

Appellant claims that the trial court's error prevented the jury from understanding Dr. Kiritsis's "overwhelming tendency to testify for defense firms and insurers." The record, however, belies that argument. Through the redacted spreadsheet and admitted portion of the *de bene esse* deposition, the jury saw and heard substantial evidence about Dr. Kiritsis's potential sources of bias. For example, the jury learned that (i) State Farm paid Dr. Kiritsis more than $100,000 between 2016 and 2020, and more than $40,000 in 2020 alone; (ii) Dr. Kiritsis received $216,448.52, $141,292.20, and $96,425 in 2020, 2019, and 2018, respectively, for his medical-legal work on behalf of defendants generally; and (iii) Carter & Shands had hired Dr. Kiritsis to testify either eight or nine times. Moreover, appellant used that evidence to attack Dr. Kiritsis's credibility during his closing argument, asserting that: "the real dispute comes down to opinions . . . . They hired [Dr. Kiritsis] to say [appellant] wasn't injured and he gave them what . . . they wanted. They got what they paid for."

Given the above circumstances, admitting every named source of Dr. Kiritsis's income for his medical-legal work outside of this case would have been "cumulative of other admitted evidence." *See Schwartz*, 46 Va. App. at 159-60. And the exclusion of such "cumulative" evidence did not prevent appellant from extensively showing the jury Dr. Kiritsis's potential for bias towards State Farm, defendants generally, and appellee's counsel. This Court thus concludes that admission of such additional limited information would not have influenced the jury's verdict or would have had only a slight effect. *See Carter*, 293 Va. at 545. Accordingly, any error in failing to do so was harmless.

III. Alleged Impartiality of Prospective Jurors

Appellant asserts that the trial court "committed reversible error and abused its discretion in refusing to strike three prospective jurors for cause"—Ms. Thompson, Ms. Jones-Sudlow, and Ms. Wile—where the opinions they expressed during voir dire "render[ed] them less than indifferent to Plaintiff's claims." He also asserts that the trial court erred by "obstructing" his questioning of those jurors and "purportedly rehabilitating th[o]se jurors through its own questioning." This Court disagrees, finding that the three jurors' statements do not evince a bias that would justify striking them for cause and that appellant's remaining arguments are procedurally defaulted. Accordingly, the trial court's determination that Ms. Thompson, Ms. Jones-Sudlow, and Ms. Wile need not be struck for cause is supported by the record and does not constitute manifest error.

"Civil litigants are entitled to a fair and impartial trial by jury consisting of people who 'stand indifferent in the cause.'" *Hawthorne v. VanMarter*, 279 Va. 566, 583 (2010) (quoting

- 18 -

Code § 8.01-358).[11]  "[T]he test of impartiality is whether the [prospective juror] can lay aside the[ir] preconceived views and render a verdict based solely on the law and evidence presented at trial."  *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011) (quoting *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000)).  The question of "juror impartiality is one of fact, and the trial court's determination on the subject is 'entitled to great deference on appeal' unless 'plainly wrong or unsupported by the record.'"  *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 121 (2014)).  Accordingly, the decision to retain or exclude a prospective juror "will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion."  *Barrett v. Commonwealth*, 262 Va. 823, 826 (2001).

In determining whether the trial court abused its discretion in refusing to strike a particular juror, this Court must "consider the voir dire of that juror as a whole" rather than merely "consider[ing] the juror's isolated statements."  *VanMarter*, 279 Va. at 583.  "A circuit court has wide latitude in seating jurors because the court has a superior ability to hear the responses and observe the body language of each member of the venire."  *Id.*  Thus, "a trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be str[uck]."  *Harvey*, 76 Va. App. at 454 (alteration in original) (quoting *Teleguz v. Commonwealth*, 273 Va. 458, 475 (2007)).

In assessing juror responses during voir dire, the trial court must consider whether the jurors "indicate to the court something that 'would prevent or substantially impair the

---

[11] "[I]t is . . . prejudicial error in the civil context when a trial court forces a party to use a peremptory strike afforded under Code § 8.01-359 to remove a venireperson who is not 'free from exception' and should have been struck for cause."  *Roberts v. CSX Transp., Inc.*, 279 Va. 111, 117 (2010) (collecting cases).

performance of [their] duties as a juror in accordance with [the court's] instructions and [the juror's] oath.'" *Andrews v. Commonwealth*, 280 Va. 231, 256 (2010) (second and third alterations in original) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)). If, after questioning, it appears to the trial court that a juror "has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law." *Keepers v. Commonwealth*, 72 Va. App. 17, 42 (2020) (quoting *Lovos-Rivas*, 58 Va. App. at 60-61). But "*per se* rules of disqualification which are based on 'a presumption of [juror] bias or prejudice,' are disfavored in Virginia." *Bay v. Commonwealth*, 60 Va. App. 520, 531 (2012) (alteration in original) (quoting *McGann v. Commonwealth*, 15 Va. App. 448, 454 (1992)).

Consequently, where, as here, bias is argued as a ground for a juror's disqualification, the question becomes whether evidence of actual bias is evident in the record through the parties' questions and the juror's answers, demeanor, or behavior. *See, e.g.*, *Garcia v. Commonwealth*, 60 Va. App. 262, 268-69 (2012) ("[D]emeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying." (quoting *Patton v. Yount*, 467 U.S. 1025, 1038 n.14 (1984))). Appellant claims that Ms. Thompson, Ms. Jones-Sudlow, and Ms. Wile should have been stricken for cause because they each expressed a belief that there are too many lawsuits. Appellant has not demonstrated, however, how such a general belief made only in response to his direct questions but not tied to any fact, circumstance, or party involved in the instant case automatically disqualifies any of these three women from sitting on this particular jury. Therefore, whether the trial court abused its discretion in denying appellant's motion to strike depends on whether it is evident from the

record that these jurors held an actual bias or prejudice that would have prevented them from fairly and impartially judging the case before them.[12]

Voir dire began with the trial court asking the venire panel several standard questions, including whether any member of the panel might be inclined to not follow "the written instructions of law" or would be unable to "sit as a juror and give a fair and impartial trial to both parties based solely on the law and the evidence in the case." No juror answered in the affirmative. Appellant's counsel then asked the entire panel several questions, including whether any juror thought "that because the Defendant admitted liability for whatever harm is caused by the accident the Defendant should get credit for that." No juror answered in the affirmative.

Appellant next asked: "Does anyone think there are too many lawsuits?" Ms. Thompson raised her hand and explained she thought there were "too many lawsuits." She also agreed with counsel's question as to whether "there are a number of instances in which people sue just to get money and not because they are really harmed." When asked why she believed that, Ms. Thompson responded, "I guess I've known of a couple people who have benefited from it." Appellant's next question seeking more specific details about Ms. Thompson's knowledge of such prior cases was interrupted by the trial court directing counsel "to move on . . . [f]rom honing in on this one particular juror and more specifics."

Without objection, appellant asked the entire panel whether anyone else had "any feelings of agreement with what Ms. Thompson just shared with us." Ms. Sudlow-Jones volunteered that she was currently a defendant "in a civil lawsuit" that involved "a slip and fall accident at [her] home" on a "snowy day." Appellant asked several follow-up questions about

---

[12] "Determination of a prospective juror's impartiality differs from the usual factual finding. It is not the determination of a past fact; instead, it is a determination of a present state of mind, a prediction of future behavior." *McGill v. Commonwealth*, 10 Va. App. 237, 242 (1990).

that pending case in New Jersey before the trial court interrupted again. The court stated that the questions were "getting too far into the specifics. The proper question would be, would that situation and her experience in the lawsuit prevent her from being able to be fair and impartial as a juror here today."

Appellant then asked Ms. Jones-Sudlow whether, given her experience, it would "be hard for [her] to put the plaintiff and the defendant in this lawsuit on equal footing right from the start?" At that point, appellee objected, noting that the court just told appellant "how to ask the question and he asked a different question." The trial court then addressed Ms. Jones-Sudlow directly to ask whether her "experience as a defendant in a case would prevent [her] from being able to sit today as a fair and impartial juror." Ms. Jones-Sudlow responded, "Fair and impartial." The trial court thanked her and instructed the parties to "move on." *See, e.g.*, *Harvey*, 76 Va. App. at 454-55 (recognizing that, as the factfinder on "[a]n underlying question of juror impartiality," it is "within the province of the trial court . . . to determine what significance to give the juror's statements, including her use of the [equivocal] language, 'I think'"); *Garcia*, 60 Va. App. at 270 (acknowledging that jurors "cannot be expected invariably to express themselves carefully or even consistently[,] . . . and under our system it is th[e] [trial] judge who is best situated to determine competency to serve impartially" (quoting *Patton*, 467 U.S. at 1039)).

Appellant asked whether anyone else on the venire panel "share[s] any concerns that Ms. Jones-Sudlow just expressed." Ms. Wile raised her hand and immediately stated: "But I can cut to [the] chase and say what question she just asked, my answer would be I think I can be impartial." During appellant's follow-up question as to whether she could set aside her belief about the existence of too many "frivolous lawsuits," Ms. Wile interrupted to say "Absolutely. Yes to all of that." Appellant then addressed the entire venire panel to ask whether anyone else

had "similar feelings to those expressed by Ms. Jones-Sudlow, Ms. Thompson and Ms. Wile." One of the jurors stated: "I plan to be impartial too."

After both parties concluded their voir dire questioning, the trial court posed one final follow-up question to the venire panel, asking whether any juror, "in reflecting on your answers and the questions, . . . know any reason whatsoever why you cannot sit as a fair and impartial juror to give a fair and impartial trial to both sides based solely on the law and evidence in the case." Once again, no juror responded in the affirmative.

Viewing the entirety of each prospective juror's voir dire, this Court finds nothing in the record to support appellant's claim that Ms. Thompson, Ms. Jones-Sudlow, or Ms. Wile expressed disqualifying bias. To the contrary, their responses to both counsel and the court indicated an understanding of their role as jurors and their ability to consider the evidence impartially. *See Garcia*, 60 Va. App. at 268-69 ("Demeanor, inflection, the flow of questions and answers can make confused and conflicting utterances comprehensible." (quoting *Patton*, 467 U.S. at 1038 n.14)). Indeed, Ms. Wile's comments plainly demonstrate that her personal opinions about the number of lawsuits in existence would not impair her ability to sit as a fair and impartial juror in the case at hand. *See, e.g.*, *Castillo v. Commonwealth*, 70 Va. App. 394, 423 (2019) (recognizing that the trial court assesses the juror's answers in light of "inflections, tone, and tenor of the dialogue, and the [juror's] general demeanor" (quoting *Smith v. Commonwealth*, 219 Va. 455, 463-65 (1978))). As already stated above, this Court will not second-guess on appeal the trial court's determinations of impartiality where evident disqualifying bias is absent from the record.

Moreover, the opinions given by Ms. Thompson, Ms. Jones-Sudlow, and Ms. Wile are significantly more attenuated from the case before them than those expressed by the five challenged jurors in *VanMarter*, 279 Va. at 571-84, regarding a vehicular accident case where

- 23 -

the defendant was a police officer. There, one of the jurors "expressed unequivocally" that his relationship with his sister, who "worked for the law firm representing VanMarter, . . . would not interfere with his ability to serve as an impartial juror." *Id.* Another juror, Ms. Blankenship, "initially stated that she might have difficulty rendering a verdict against a police officer but quickly qualified her statement and reconsidered her position." *Id.* A third juror "simply stated that she agreed with Juror Blankenship's initial response and did not state that she was unable to serve impartially." *Id.*

Finally, Jurors Harris and Draper "had familial and personal relationships with police officers, [and] provided responses that were equivocal and tentative."[13] *Id.* But both "indicated that they would follow the law even if they disagreed with it" and none of their statements "indicated that they would be unwilling or unable to follow the instructions of the court." *Id.* The Supreme Court ultimately concluded that "the circuit court did not commit manifest error in refusing to strike the five jurors for cause." *Id.*

The same outcome is justified in this case, supported by the jurors' statements on the record and appellant's failure to link the jurors' personal opinions to their fitness as jurors. Ms. Thompson merely expressed a general belief that there are "too many lawsuits" nowadays where people are looking to gain financial benefits disproportionate to the harm they suffered. She made no statement, however, indicating that she would be biased against plaintiff, particularly in a case where the defendant had already admitted fault. And although both Ms. Jones-Sudlow and Ms. Wile agreed to the existence of too many "frivolous lawsuits," both affirmatively stated their ability to be fair and impartial in the case before them. *Contra*

---

[13] "Juror Harris stated that '[m]aybe' she should not serve as a juror, that it 'might' be 'a little difficult' to serve as a juror, and that she would have 'some concern' in rendering a verdict against VanMarter." *VanMarter*, 279 Va. at 584 (alteration in original). "Similarly, Juror Draper stated that she 'probably' felt similarly to Juror Harris, but earlier had stated clearly that she held no biased opinions in favor of police officers." *Id.*

*Dejarnette v. Commonwealth*, 75 Va. 867 (1881) (ruling that the trial court should have removed a prospective juror who equivocated when asked if he had formed a fixed opinion about the accused's guilt); *Breeden v. Commonwealth*, 217 Va. 297, 300 n.* (1976) (holding that a juror should have been struck for cause when he made the "obviously impermissible statement of bias" that he believed "the fact that [the defendant] is here is [a] strong indication that he is guilty").

Under the totality of the circumstances, this Court cannot conclude that appellant met his burden of proving actual bias, especially when he failed to question or elicit any statements from the jurors about whether their personal opinions would affect their ability to consider the evidence fairly and impartially. One party's unsupported subjective belief as to a juror's bias is not a legitimate basis for the trial court to strike for cause. In the absence of evidence showing such bias, this Court holds that the trial court did not abuse its discretion in denying appellant's motion to strike for cause either Ms. Thompson, Ms. Jones-Sudlow, or Ms. Wile. *See Townsend v. Commonwealth*, 270 Va. 325, 329 (2005) (acknowledging that the trial court's ability "to see and hear each member of the venire respond to questions posed" places it in a "superior position to determine whether a prospective juror's responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath").

As a final note, appellant's additional contentions that the trial court engaged in improper practices during voir dire are procedurally defaulted. Appellant did not object when the court interrupted his questioning nor did he object when the court asked Ms. Jones-Sudlow "if [her] experience as a defendant in a case would prevent [her] from being able to sit today as a fair and impartial juror." *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling,

except for good cause shown or to enable this Court to attain the ends of justice.")[14]; *Bell v. Commonwealth*, 264 Va. 172, 196 (2002) (failure to object to trial court's use of leading questions to rehabilitate a juror waived the issue for appeal). Accordingly, appellant did not preserve those arguments for appeal.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed.*

---

[14] Appellant does not seek to invoke either of these exceptions, and this Court will not do so sua sponte. *Hannah v. Commonwealth*, 303 Va. 106, 125 (2024).